**Terry ARTRIP, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. 84 Civ. 6972 (CBM).**

United States District Court,
S.D. New York.

Jan. 13, 1987.

Freeman, Wagner, Tabakman & Weiss by Lewis B. Insler, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., D.N.Y. by Neal S. Mann, Asst. U.S. Atty., New York City, for defendant.

## OPINION

MOTLEY, District Judge.

Plaintiff, Terry Artrip, who was born on October 16, 1940, applied for social security disability benefits in April 1983, claiming a painful and disabling back injury. After intitial denials of his application, an administrative hearing was held where plaintiff was represented by counsel. Subsequently, plaintiff's claim was again denied by the Administrative Law Judge, who found that although plaintiff's back injury prevented him from returning to his previous work, he retained the residual functional capacity to do a full range of sedentary work. The ALJ's decision was affirmed by the Appeals Council as the final decision of the Secretary of Health and Human Services, and plaintiff then filed for review by this court. After an initial delay, both sides cross-moved, pursuant to Fed.R.Civ.P. 12(c), for judgment on the pleadings. For the reasons that follow, the decision of the Secretary is affirmed.

*Facts*

Plaintiff's back problems began in October 1982 when he slipped, injuring his back, in the course of his job at a glass factory. [Administrative Record ["AR"] 25–26]. Plaintiff was hospitalized for about five days, during which time he underwent trac-

tion and a received a final diagnosis of acute low back sprain and possible herniated intervertebral disc. [AR 88–90]. Plaintiff returned to work, however, and remained on the job until about April 1983. In July 1983 plaintiff was again hospitalized, this time for about three days. The final diagnosis at the end of this second hospitalization, during which time plaintiff underwent a myelogram, or x-ray examination of the spinal cord, was that he was suffering from a "herniated intervertebral disc." [AR 101–03]. A short while later, in early September 1983, plaintiff was readmitted to the hospital complaining of persistent lower back pain and sciatica. The admission history and examination at this time revealed that plaintiff's lumbar motions were mildly limited and painful, and also that he was suffering from atrophy in his right leg. [AR 93]. During this hospitalization, however, plaintiff underwent a successful chemonucleolysis, or enzyme injection for the purpose of dissolving the herniated nucleus pulposis. According to the hospital records, plaintiff "had a very smooth post-operative course and his original symptoms subsided almost completely." Also according to the hospital records, he was discharged in a "much improved" condition and was told to avoid strenuous activity. [AR 92].

During his administrative hearing, plaintiff claimed that the chemonucleolysis did not help him at all, and that he returned to the hospital a short time later in September 1983 for a stay of almost two weeks. [AR 27, 38]. However, despite the fact that plaintiff was represented by an attorney both at the administrative level and before this court, and was specifically questioned by the ALJ about the absence of documentation for this second September 1983 hospitalization [AR 37–38], no records of this alleged second September 1983 hospitalization have ever been produced.

Other medical evidence in this case includes a consultative report made by Dr. Ronald Bagner at the request of the Office of Disability Determinations after his examination of plaintiff in early January 1984. [AR 95–96]. Dr. Bagner noted that plaintiff had been prescribed Tylenol # 3 and valium as pain medications, that he ambulated with difficulty and appeared to be in "moderate distress," but that he dressed and undressed with "minimal difficulty," and that there was no atrophy or motor abnormality in his lower extremities. An accompanying x-ray report evidenced only "minimal degenerative changes." [AR 97]. Dr. Bagnor made no determination, either positive or negative, regarding plaintiff's ability to work. In mid January 1984, two non-examining physicians for the Office of Disability Determinations reviewed the medical evidence of record, including Dr. Bagner's report and plaintiff's three hospital reports noted above, and both concluded that plaintiff was capable of performing either sedentary or light work. [AR 98, 49]. At least one of these doctors specifically found that plaintiff was capable of sitting for at least six hours. [AR 49].

The court observes that in support of his disability application, plaintiff submitted no records from his own treating physicians, Dr. Rosen and Dr. Reis, whom he was allegedly seeing weekly at the time of the application. [AR 73, 81]. Other than some entries by Dr. Rosen and Dr. Reis in the records of plaintiff's various hospitalizations, the evidence up to the present includes no other evaluations by either doctor, notwithstanding requests made to both doctors by the Social Security Administration that a medical report form be submitted. [AR 94, 100]. The court also notes that plaintiff's hearing testimony, in which he stated that he was not seeing a physician regularly and had only telephone contact with Dr. Rosen in order to obtain prescription pain medications [Tr. 34, 35], is somewhat inconsistent with plaintiff's earlier statements on his benefits applications that he was variously seeing Dr. Rosen or Dr. Reis weekly. [AR 73, 81] [*But see* AR at 39].

At the hearing before the ALJ held in June 1984, plaintiff testified that he was unable to work because of the pain and insomnia associated with his back prob-

lems. He also testified that he had stopped working on the advice of Dr. Rosen, his treating physician. [AR 26] There is no evidence other than plaintiff's own testimony that this was the case, however, and Dr. Rosen himself responded to the request for information by the Office of Social Security Determinations simply by saying that plaintiff had been referred to another doctor. [AR 94]. Plaintiff also testified at the hearing that he did not know that there was anything to prevent him from working at a light or sedentary job, but that he had neither tried such work [AR 39] nor had he sought it. [AR 29].

*Discussion*

In reviewing the Secretary's determination, this court is not to decide the case de novo, *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980), but rather must apply a somewhat deferential standard of review. The Social Security Act provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Sections 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Donato v. Secretary of Health and Human Services*, 721 F.2d 414, 418 (2d Cir.1983). Substantial evidence in this context means " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. at 401, 91 S.Ct. at 1427, (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The rule that the Secretary's findings of fact, as well as the inferences and conclusions to be drawn from those findings, are conclusive applies even in those cases where the district court's own evaluation of the claim and the evidence might differ from the Secretary's. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982), *cert. denied*, 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983). Furthermore, the resolution of conflicts in the evidence is within the sole province of the Secretary, as trier of fact. *Richardson v. Perales*,

402 U.S. at 399, 91 S.Ct. at 1426, *McHale v. Mathews*, 416 F.Supp. 1191, 1193 (S.D.N.Y. 1976). Likewise, it is the function of the Secretary and not the court to pass on the credibility of all the witnesses. *Richardson v. Perales, supra, Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 642 (2d Cir.1983); *McLaughlin v. Secretary of Health, Education and Welfare*, 612 F.2d 701, 705 (2d Cir.1980). Of course, in making his determination, the Secretary must respect the applicable presumptions and judicially developed guidelines as to the competency and weight of certain evidence. *See, e.g., Schisler v. Heckler*, 787 F.2d 76, 83 (2d Cir.1986) (opinion of claimant's treating physician binding unless controverted by substantial evidence); *Aubeuf v. Schweiker*, 649 F.2d 107, 113 (2d Cir 1981) (impropriety and evidentiary insubstantiality of expert "medical opinions" by ALJ beyond the scope of his competence).

■ In the present case, plaintiff complains simply that the Secretary's decision denying him benefits was unsupported by substantial evidence. This court disagrees. While determining that plaintiff did suffer from a severe impairment that prevented him from returning to his previous work in a manufacturing plant, work which required significant climbing, lifting and bending [AR 23–25], the ALJ concluded that this impairment was not so severe that it constituted a "listed impairment" thus qualifying the claimant automatically for benefits. In arriving at the conclusion that plaintiff retained the residual functional capacity to do a full range of sedentary work, the ALJ relied not only on the opinions of the two non-examining physicians, which of course have a lesser weight than other medical evidence in the record, *see Havas v. Bowen*, 804 F.2d 783, 786 (2d Cir.1986), but also on the report of Dr. Bagner, the consultative examining physician, whose opinion of plaintiff's condition was generally favorable, and on the accompanying favorable x-ray review of Dr. Greenwald. In addition, the ALJ relied heavily on the discharge report from plaintiff's last documented hospitalization in September 1983

which, significantly enough, was prepared by Dr. Reis, plaintiff's treating physician, and which gave a very hopeful prognosis and instructed plaintiff merely to avoid strenuous activity.

The ALJ concluded that plaintiff, in light of his relative youth, 20 C.F.R. 404.1563, his work experience, his educational background, and his physical capacity to do sedentary work as specifically established by the two non-examining physicians and not contradicted by any other current medical evidence, retained the ability to do gainful work, albeit work less strenuous than he had done in the past. In coming to this conclusion, the ALJ properly relied on the Secretary's published medical vocational guidelines. *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Mongeur v. Heckler,* 722 F.2d 1033, 1039 n. 3 (2d Cir.1983) (*per curiam*). *See* 20 C.F.R. 404, Subpt.P.App. 2, Rule 201.24 and 201.25.

■ The court notes that even though the Secretary had the burden of proving the last step of the benefits inquiry, that is, whether plaintiff retained the capacity to do work other than his former work, *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir. 1982), the ALJ's decision and the record underlying it show that the Secretary has met this burden. Plaintiff's main attack on the finding that he retained the capacity to perform the full range of sedentary work focuses mainly on the ALJ's negative evaluation of plaintiff's subjective complaints of pain. Plaintiff is in error when citing *Bastien v. Califano,* 572 F.2d 908 (2d cir. 1978), he states that the law requires an applicant's allegations of pain to be taken as conclusive. *Bastien* says no such thing, but instead simply reiterates the well-established law that in assessing disability the ALJ must consider four different types of factors: objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain or disability, and the claimant's educational background, age and work experience. *Id.* at 912.

Clearly, it is not improper for an ALJ to question the credibility of a claimant's statements of disabling pain, or to refuse to take them at face value. Indeed, recent legislation provides that

[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished ... would lead to a conclusion that the individual is under a disability....

42 U.S.C. Section 423(d)(5), (as amended by P.L. 98–460). *See* also 20 C.F.R. Sections 404.1528 and 404.1529.

■ The ALJ's conclusion that plaintiff's pain was not so severe or disabling as to prevent him from engaging in any gainful activity whatsoever, does not reflect a judgment by the ALJ that plaintiff experienced *no* pain or that his back injury was a fabrication. Indeed, the ALJ concluded that plaintiff had a severe back injury which precluded him from engaging in his former line of heavy work. It is not outlandish, however, that after considering the improvements in plaintiff's condition as reflected in the medical records subsequent to plaintiff's September 1983 hospitalization, in his hopeful discharge prognosis at this last documented hospitalization, in the apparent effectiveness of the routine pain medications plaintiff was taking, and in the lack of any medical evidence or opinion subsequent to plaintiff's September 1983 hospitalization that he was restricted from engaging in any but strenuous activity, the ALJ declined fully to credit plaintiff's own assertions that his back pain was so severe as to incapacitate him totally. Rather than being forbidden, such a weighing of all the evidence in the case, including a claimant's subjective complaints of pain, is precisely the ALJ's function. In arriving

at a conclusion as to the disabling character of a claimant's alleged pain, the ALJ has the responsibility to consider all the evidence before him, the objective and the expert medical evidence, as well as claimant's testimony, and his demeanor and other indicia of credibility. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). While the ALJ is of course required to consider the subjective evidence of disability, *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980), he is by no means required to accept it as conclusive where it is undermined by the other evidence in the case. *Marcus v. Califano*, 615 F.2d at 27. Moreover, the mere fact that a claimant is suffering from a back injury, *Wrennick v. Secretary of Health, Education and Welfare*, 441 F.Supp. 482 (S.D.N.Y.1973); *Pucci v. Richardson*, 369 F.Supp. 1344 (S.D.N.Y.1973), or in fact suffers some pain, *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir.1983) (*per curiam*); *Thorne v. Schweiker*, 694 F.2d 170 (8th Cir.1982), does not necessarily mandate a conclusion that he is so severely impaired as to be "disabled" within the meaning of the Act.

The remainder of plaintiff's attack on the ALJ's decision is comprised mainly of various disagreements with the ALJ's evaluation of the evidence. For example, plaintiff argues against the ALJ's finding that "the prior atrophy was apparently not significant," by pointing to the prior medical report itself, which states that there was "considerable atrophy." The ALJ's conclusion that the previously reported atrophy lacked real significance, however, was explicitly substantiated by the several subsequent medical reports which themselves either did not mention atrophy or else specifically found none. Plaintiff also attacks the ALJ's finding, based on the September 1983 discharge report, that the chemopapayain injection had relieved plaintiff of many of his symptoms, by contrasting it with his own merely testimonial evidence that the injection was of little help and that he had to be readmitted to the hospital shortly after. As noted above, however, plaintiff produced no records of this alleged subsequent hospitalization, or even of his subsequent alleged visits to treating physicians during this period. This is so notwithstanding the fact that this extremely damaging lacuna in the evidence was pointed out by the ALJ at the hearing, and notwithstanding the fact that plaintiff, who was represented by an attorney, had ample opportunity to supplement the record prior to the final determination by the Appeals Council.

■ Plaintiff's also alleges that he was subjected to a "sit and squirm" test in violation of the principles set forth in *Aubeuf v. Schweiker*, 649 F.2d 107, 113 (2d Cir.1981). While clearly an ALJ must not use his impressions of a claimant's demeanor to form "medical opinions" beyond his competence and in contrast to the competent medical evidence, this does not mean that in evaluating a claimant's disability application an ALJ may not *consider* the individual's demeanor and credibility in the light of the overall medical and other evidence. *Marcus v. Califano*, 615 F.2d at 27.

■ Similarly unconvincing is plaintiff's contention that the Secretary's final determination is fatally flawed by the ALJ's observation that plaintiff's medications did not suggest severe pain. While this court is not entirely comfortable with the suggestion of a medical judgment on the part of the ALJ here, *see Aubeuf v. Schweiker*, 649 F.2d at 113 n. 9, the often thin line between an ALJ's legitimate consideration of medical evidence and his improper substitution of his own "medical judgment" has not been crossed here. The ALJ's observations about the true severity of plaintiff's pain as suggested by his medications were made in the context of a review of the entire record, including the objective findings and opinions of examining physicians both within and without the Administration.

In concluding that the Secretary's decision to deny disability benefits in the present case is supported by substantial evidence, the court takes note of the significant gaps in plaintiff's medical record. In contrast to the substantial, though not un-

**382**

equivocal, evidence in the record supporting the Secretary's conclusion that plaintiff was not so disabled that he could engage in no gainful activity, plaintiff has offered scant medical evidence to generate any conflict with this conclusion. This, notwithstanding the fact that plaintiff has the initial burden of proving his disability. *Berry v. Schweiker*, 675 F.2d at 467. Plaintiff's failure to produce any documentation of his alleged fourth hospitalization of September 1983 is extremely troubling in light of the absolutely crucial importance of this alleged treatment in undermining or adjusting the optimistic report that was given in plaintiff's hospital discharge earlier in September 1983, and on which the ALJ understandably relied quite heavily. Similarly disturbing, is plaintiff's utter failure to supply any post-September 1983 evaluations from his treating physicians, notwithstanding the fact that he clearly did have such treating physicians, and that according to plaintiff's own testimony the initial advice to stop working allegedly came from one of these physicians. Thus, the main conflicts in the evidence before the ALJ on which plaintiff relies for his assertion that the Secretary's determination is untenable, are essentially unsubstantiated.

*Conclusion*

In sum, after thorough review of the record, this court concludes that the ALJ's determination that plaintiff was not disabled within the meaning of the statute, and thus that plaintiff was not entitled to disability benefits, is supported by substantial evidence. Accordingly, because the Secretary's decision is reasonable and is supported by the evidence, it is affirmed.