### Luis TORRES, Plaintiff,

v.

### Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

### No. 87 Civ. 7435 (PKL).

United States District Court, S.D. New York.

Dec. 9, 1988.

---

Israel, Adler, Ronca & Gucciardo, New York City (Angelo C. Gucciardo, of counsel), for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Diogenes P. Kekatos, Annette H. Blum, Teena Berman, Office of the General Counsel U.S. Dept. of Health and Human Services, of counsel), for defendant.

AMENDED OPINION AND ORDER

LEISURE, District Judge:

This action under Sections 205(g) and 1631(c)(3), of the Social Security Act, as

amended ("the Social Security Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeks a review of a final determination by the Secretary of Health and Human Services ("Secretary") denying plaintiff's application for Disability Insurance Benefits and Supplemental Security Income ("SSI"). The parties have cross-moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

The plaintiff, Luis Torres, filed for disability insurance and SSI benefits on December 7, 1984. The applications were denied initially, and again denied upon reconsideration. Plaintiff then filed a request for a hearing, which resulted in a denial of the claim by Administrative Law Judge ("ALJ") Mark Hecht on July 18, 1986. Thereafter, plaintiff filed a request for review of the hearing decision with the Appeals Council, which resulted in a remand of this claim for consideration of the opinions of plaintiff's treating physicians. A supplemental hearing was held by ALJ Helen Anyel pursuant to the Appeals Council remand order on January 20, 1987, which again resulted in a denial of the claim on May 29, 1987. The latter decision of the ALJ became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on August 21, 1987. Plaintiff then filed this suit in the United States District Court for the Southern District of New York.

FACTUAL RECORD

Plaintiff was born on February 1, 1947, and came to the continental United States in 1965. He attended school in Puerto Rico only until the 4th grade and speaks Spanish but has only a limited ability to read and write Spanish. He cannot read, write or speak English. Plaintiff's past relevant work experience is as a factory worker, packager/stockman, dishwasher, and cleaning man in a hotel. Plaintiff stopped working after he sustained a back injury at work in March 1982.

Plaintiff testified that he has been unable to return to work due to constant pain in his back radiating to his legs. Medications do little to relieve his pain. Plaintiff has to lie down during the day and his pain is often so severe that he has to stay in bed; he cannot sit too long and has difficulty walking, requiring a cane to ambulate. Plaintiff is able to bathe and dress, sometimes requiring assistance; he does no household chores and sleeps intermittently.

Plaintiff was treated by Dr. Pasquale M. Lapalorcia from March 1982 through May 1986. Dr. Lapalorcia found painful restriction of motion of the lumbosacral spine with impaired and painful straight leg raising, bilaterally at the time of his first examination on March 30, 1982. He first reported a diagnosis of herniated nucleus pulposus on September 4, 1982. (Tr. 201).[1] Subsequent reports filed by Dr. Lapalorcia indicated findings of painful restriction of motion with spasm of the paraspinal muscles (Tr. 139–142); right inguinal hernia (Tr. 149); straight leg raising bilaterally, painful and restricted to forty degrees (Tr. 164); and radiation of pain to the upper torso and both lower extremities (Tr. 171).

In May 1985, Dr. Lapalorcia diagnosed plaintiff as suffering from post traumatic derangement of the lumbosacral spine and from a herniated disc. He concluded that the plaintiff was totally disabled and might need surgical intervention. Dr. Lapalorcia concluded that plaintiff could not sit or stand for more than thirty minutes, could lift weights of up to ten pounds and carry weights of up to five pounds, and that he was unable to bend, push or pull. (Tr. 149–50).

Subsequently, Dr. Lapalorcia noted that plaintiff walked with a slight limp, and balanced himself with the edge of the table and a cane. There was moderate spasm and tenderness of the paraspinal muscles from the interscapular region of the lumbosacral area. There was marked tenderness upon palpation of the lumbar spinous processes and moderate painful restriction of motion of the lumbosacral spine. Pressure at the left sciatic notch was painful, and

1. "Tr." refers to the transcript of the administrative record, filed by the Secretary as part of his answer.

straight leg raising was bilaterally painful. Dr. Lapalorcia also diagnosed a right inguinal hernia. He stated that the plaintiff has been treated with several prolonged cycles of physical therapy, several types of anti-inflammatory agents, muscle relaxants and analgesic medications. (Tr. 163–68). He added, however, that plaintiff's response was "always poor and very transient." (Tr. 166).

Dr. Lapalorcia referred plaintiff for an orthopedic consultation with Dr. Zwi Kahanowicz, who examined him twice in 1982. Dr. Kahanowicz found restriction of motion, lumbar list to the left, Laseque sign positive, and stretch sciatic nerve sign positive bilaterally. He concluded that plaintiff had an acute derangement of the lumbosacral spine and suggested conservative treatment, neurological evaluation and an electromyography ("EMG") of the lower extremities.

Plaintiff was referred for a CAT scan of the lumbosacral spine on September 18, 1984. Dr. Amado Dolorico reported that a centrally bulging disc at L5–S1 was present with degenerative disc disease, L4–L5 level. (Tr. 138).

Plaintiff was also referred to Drs. Morton Finkel and Ernesto C. Resurreccion for a neurological consultation. Dr. Resureccion rendered a report for the Workman's Compensation Board, dated September 7, 1984, which indicates that plaintiff suffers from lumbar radiculopathy and is partially disabled. (Tr. 183). Dr. Finkel found low back pain and EMG evidence of a herniated nucleus pulposus that he considered to show marked partial disability. (Tr. 157).

The claimant was also referred to Sherwood Jacobsen, M.D. for a neurological examination. The doctor found decreased lumbar lordosis (curvature), some tenderness, use of a cane and limited bending, which he considered disabling. At the same time, he did not find abnormal straight leg raising, and his diagnosis was of chronic lumbosacral sprain and lumbosacral radiculopathy. He concluded that plaintiff was totally disabled for an indeterminate period of time and suggested hospitalization for bedrest and traction for a period of ten to fourteen days. (Tr. 158–61).

At the request of the state agency disability determination service ("DDS"), plaintiff had a consultative evaluation from Dr. Caleb Medley, in January 1985. Dr. Medley reported four out of five motor weakness, loss of range of motion, and decreased sensation in the left foot, but the doctor was not sure how much the findings stemmed from true limitations and how much from complaints of pain. He observed that plaintiff walked with a limp favoring the left lower extremity but that he was able to walk without a cane. Plaintiff was able to flex his spine thirty degrees and was able to squat and rise from that position. (Tr. 143–44). Dr. Medley "noted that the patient is obviously experiencing some pain but he definitely is exaggerating how much pain is present." (Tr. 144) He diagnosed lumbosacral strain with possible herniated disc with L4–5 on the left and a history of the ecentral herniated disc at L5–S1 based on the previous CAT scan. (*Id.*)

Residual Function Capacity Assessments were completed on two occasions by Dr. D. Randall, a non-examining physician employed by the New York State Office of Disability Determinations. His assessment of February 15, 1985, concluded that plaintiff could lift a maximum of twenty pounds with frequent lifting and carrying of up to ten pounds; stand or walk a total of six hours; sit about six hours; had an unlimited capacity to push/pull; and could occasionally climb, balance, stoop, kneel, crouch and crawl. (Tr. 145–47). Dr. Randall's assessment of January 28, 1986 was completed similarly, except that Dr. Randall now concluded that plaintiff could never crouch and his ability to push/pull would be limited to twenty pounds. He reviewed the previous doctors' reports and expressed the opinion that the plaintiff could lift twenty pounds, with occasional climbing, balancing, stooping, kneeling or crawling. (Tr. 155–56).

On remand, the ALJ directed that plaintiff have two additional consultative exams. Pursuant thereto, Dr. Arthur H. Weiss ex-

amined plaintiff, as a neurological consultant for the Secretary, on March 2, 1987. Dr. Weiss found plaintiff's gait was cautious with a tendency to waddle; decreased foot tapping; mild degree of paravertebral lumbar muscle spasm with pain on acute lumbar flexion and extension; and pain on straight leg raising at twenty degrees. Dr. Weiss concluded that plaintiff's history is consistent with lower lumbar radiculopathy, bilateral and possibly on a discogenic basis. He could find no objective neurological abnormalities and suggested plaintiff undergo EMG. (Tr. 209).

Dr. Weiss also completed an assessment of plaintiff's residual functional capacity wherein he concluded that plaintiff's ability to sit was unaffected by his condition. Plaintiff could stand or walk only a total of one hour, out of an eight hour work day and only for fifteen minutes without interruption. Lifting would be limited to five pounds and for a maximum occasionally of two hours per eight hour work day. Plaintiff could never climb, balance, stoop, crouch, kneel or crawl and his ability to bend and push/pull would be limited. (Tr. 210–11).

Finally, the medical evidence of record contains the report of a March 1987 consultative examination of plaintiff, conducted by Dr. Robert Zaretsky. X-rays taken by Dr. Zaretsky revealed marked disc degeneration at L4–L5 and moderate degeneration at L5–S1. Upon physical examination, Dr. Zaretsky observed no spasm of the lumbosacral or cervical spine or any atrophy of the lumbosacral spine. Straight leg raising was negative, and plaintiff's reflexes were normal. There was full motion of the hips upon abduction, adduction and internal and external rotation. Dr. Zaretsky noted that plaintiff complained of pain in the back upon attempting to flex each hip, as well as when attempting to flex the knees. Dr. Zaretsky also made special reference to his observation of plaintiff's voluntary restriction of flexion of the neck to thirty degrees, extension to thirty-five degrees and rotation to thirty-five degrees to the right and left. (Tr. 212).

In his assessment of plaintiff's ability to do work-related activities, Dr. Zaretsky stated that plaintiff's ability to lift and carry was affected by his back impairment in that, plaintiff could lift or carry weights of up to ten pounds, with no more than two to four pounds frequently. Dr. Zaretsky also concluded that plaintiff could sit, stand or walk a total of four hours in an eight-hour day and up to two hours without interruption. (Tr. 213–14).

## DISCUSSION

■ A person seeking disability benefits is considered disabled if he is incapable of substantial activity due to a physical impairment that has lasted or can be expected to last for a period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); 42 U.S. C. § 1382c(a)(3)(A). To qualify for disability benefits under the Social Security Act, the plaintiff must be unable to perform his previous work or any other kind of substantial work. *Dousewicz v. Harris*, 646 F.2d 771, 772 (2d Cir.1981). The burden of proving disability is on the plaintiff. 42 U.S.C. § 423(d)(5); *See, e.g., Aubeuf v. Schweiker*, 649 F.2d 107, 111 (2d Cir.1981). However, once the plaintiff has shown that his impairment prevents his return to his prior employment, the plaintiff has established a *prima facie* case, and the burden shifts to the Secretary. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984). The Secretary must then "produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform, considering not only his physical capability, but as well his age, his education, his experience and his training." *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir.1983).

■ In assessing disability claims, the Secretary must make a thorough inquiry into the claimant's condition and must be mindful that "the Social Security Act is a remedial statute, to be broadly construed and liberally applied." *Gold v. Secretary of H.E.W.*, 463 F.2d 38, 41 (2d Cir.1972). The Secretary in evaluating disability

claims utilizes a five step sequence, promulgated in 20 C.F.R. §§ 404.1520, 416.920 (1981).

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982).

In the present case, the ALJ found that the claimant has not engaged in substantial gainful activity since the time of the accident. The ALJ further found that the claimant does not have an impairment listed in Appendix 1. The ALJ determined that plaintiff was unable to return to his previous employment, yet could engage in other substantial gainful activity in the national economy. Plaintiff was explicitly found capable of "light" and "sedentary" work and therefore was deemed not disabled.

## SCOPE OF JUDICIAL OF REVIEW

The Act provides that the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g) (made applicable to the SSI program by 42 U.S.C. § 1383(c)(3)); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Donato v. Secretary of Health and Human Services,* 721 F.2d 414, 418 (2d Cir. 1983). Substantial evidence in this context has been defined as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. at 1427 (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *see also Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981). The Secretary's determination must be affirmed if supported by substantial evidence and not the product of legal error. *See, e.g., Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

## SUBSTANTIAL EVIDENCE

■ In the present case, the ALJ before whom plaintiff appeared concluded that plaintiff could not perform his past relevant work, but retained the residual functional capacity to perform the full range of light and sedentary work. Applying the above standards, this Court finds that the ALJ's decision is not supported by substantial evidence.

Light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Sedentary work is defined as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Although a finding that one can do light work also generally encompasses a finding that he can do sedentary work that rule does not help where, as here, the ALJ erroneously found the plaintiff capable of light work. The Court must evaluate independantly whether the finding that plaintiff is capable of sedentary work is supported by substantial evidence. Here the ALJ refers in her decision to plaintiff's capability of performing sedentary work (Tr. 15), yet only makes the explicit finding that plaintiff can engage in light work. (Tr. 16). Neither determination is supported by substantial evidence in this case.

■ The "treating physician rule" governs the consideration accorded the medical opinion of claimant's treating physician relative to other medical evidence presented at a disability hearing. *See, e.g., Murdaugh v. Secretary of Health and Human Services*, 837 F.2d 99 (2d Cir.1988). The opinions of treating physicians are therefore entitled to extra or great weight. *Id.; Bluvband v. Heckler*, 730 F.2d 886, 895 (2d Cir.1984). Indeed, "[t]he expert opinion of a treating physician on the subject of disability is binding on the Secretary unless substantial evidence is presented to the contrary." *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir.1983). The reason for this rule, of course, is that the treating physician's report reflects an expert judgment based on continuing observation of the patient's condition over a prolonged period of time. *See, e.g., Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986).

Plaintiff's treating physician, Dr. Lapalorcia has stated plaintiff "is totally disabled for work ... [that] he has difficulty in using public transportation, difficulty in going up and down the stairs ... can lift up to 10 lbs., carry up to 5 lbs., is unable to bend, push or pull." (Tr. 150). Clearly, Dr. Lapalorcia's statements indicate that plaintiff does not have the residual functional capacity to perform either light or sedentary work. Dr. Jacobsen, the attending neurologist, in a report dated June 20, 1985, opined that plaintiff was totally disabled for an indeterminate period of time. Dr. Jacobsen examined plaintiff on at least five occasions. (Tr. 158–160). Finally, Drs. Finkel and Resurreccion, also neurologists, examined plaintiff at Dr. Lapalorcia's request. In their report, of November 24, 1984, following positive EMG, they diagnosed lumbar 5 herniated nucleus pulposus. (Tr. 157). These opinions of the treating physicians are binding on the Secretary unless controverted by substantial evidence.

■ The reports of consulting physicians, on the other hand, should be given limited weight in evaluating a claimant's disability. *Bluvband v. Heckler*, 730 F.2d 886, 893–894 (2d Cir.1984). This is due to the fact that consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day. Often, consultative reports ignore or give only passing consideration to subjective symptoms without stated reasons. *See, e.g., Ledoux v. Schweiker*, 732 F.2d 1385, 1388 (8th Cir. 1984). The report of consultative physicians which were formulated after the physicians had examined the claimant only once, and are contradicted by the evaluation of the claimant's treating physician, do not constitute substantial evidence. *Bluvband v. Heckler*, 730 F.2d 886 (2d Cir.1984).

In the present case, the contradictions between the consulting doctors' reports and that of the treating physician concerned the evaluations of plaintiff's residual functional capacity. Yet, these evaluations were completed after the Secretary's consulting physicians had examined plaintiff on only one occasion and apparently

without the benefit of all the previous reports.[2] As shown below they do not constitute substantial evidence to contradict the treating physicians' diagnosis.

Plaintiff was examined by the Secretary's consultants on three occasions. Dr. Medley diagnosed lumbar sacral strain and possible herniated disc at L4–L5, left side. Dr. Weiss, a neurologist, after examining plaintiff concluded that plaintiff could lift a maximum of five pounds, for a maximum of two hours a day; could stand or walk a maximum of one hour per day, with uninterrupted standing or walking for fifteen minutes; could never climb, balance, stoop, crouch, kneel or crawl and was limited in bending, pushing/pulling. (Tr. 210–211). Clearly, Dr. Weiss's residual functional capacity does *not* indicated that plaintiff retains the capability for light or sedentary work.

■■■ An ALJ may not substitute her own opinion for that of an expert. Under no circumstances may the ALJ arbitrarily substitute her own inferential judgment for competent medical opinion in disability proceedings particularly where the ALJ's judgment assumes some degree of medical expertise and would amount to rendering an expert medical opinion which is based on competence he or she does not possess. *See, e.g., Ceballos v. Bowen,* 649 F.Supp. 693 (S.D.N.Y.1986); *LaFace v. Heckler,* 589 F.Supp. 192 (S.D.N.Y.1984) (It is not appropriate for ALJ to substitute his own opinions for those of experts in matters requiring expert skill, knowledge or experience). Here, the ALJ improperly disregarded Dr. Weiss's opinion limiting plaintiff to lifting five pounds, calling it "inexplicable." (Tr. 15). The ALJ stated that she "must of necessity give more consideration to the absence of signs of disease on his examination, as there is no explanation for [sic] he [Dr. Weiss's] stated limitations on that basis." (Tr. 15). Additionally,

Drs. Lapalorcia, Finkel and Medley diagnosed a herniated disc L5–S1. The ALJ, drawing her own conclusions from the CAT scan results, stated it showed only a bulging and not a herniated disc. (Tr. 15, 138). Yet, the CAT scan report states that the impression of a centrally bulging disc "should be correlated with the neurological findings." (Tr. 138). The ALJ clearly does not have the expertise to do this. Nevertheless, the ALJ improperly drew her own medical conclusions from the medical record.

Nor did Dr. Zaretsky find that plaintiff had the residual functional capacity to perform light or sedentary work. Dr. Zaretsky, an orthopedist, concluded that plaintiff would be limited in his ability to lift and carry. The maximum weight plaintiff could lift would be ten pounds, with a maximum of three pounds occasionally, and two to four pounds frequently; plaintiff could stand or walk for a total of four hours a day—for two hours uninterrupted; could sit for four hours a day—one hour uninterrupted; could never climb, balance, stoop, crouch, kneel or crawl; and is restricted in his ability to bend and push/pull.

It appears the Secretary has relied on the two residual functional capacity evaluations completed by Dr. Randall, to support its finding that plaintiff can perform the full range of light work. The ALJ stated that "nonexamining agency consultants opinions can be given significant weight if backed by supportive medical evidence." (Tr. 15). However, "[a] corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physicians' diagnosis." *Hidalgo v. Bowen,* 822 F.2d 294 (2d Cir.1987); *see also Schisler v. Bowen ("Schisler II"),* 851 F.2d 43 (2d Cir. 1988) (deleting as based on dicta the nonexamining physician rule), on petition for

---

**2.** The Secretary seemingly did not furnish Dr. Weiss with a copy of Drs. Finkel and Resurrecion's report of October 24, 1984, which stated that plaintiff had undergone EMG, the results of which were positive, (Tr. 157), for Dr. Weiss recommended that plaintiff have an EMG. Dr. Weiss, not having all the previous medical re-

ports, therefore suggested additional tests should be performed. *See Spicer v. Califano,* 461 F.Supp. 40, 47 (N.D.N.Y.1978) (consulting doctor's report not substantial evidence because, *inter alia,* "the report appears to be inconclusive, as the doctor indicated that, in his opinion, additional tests should be conducted").

rehearing decided September 19, 1988 (ordering the restoration of the following language: "opinions of non-examining medical personnel cannot, in themselves and in most situations, constitute substantial evidence to override the opinion of the treating source.").[3] At no time has the Second Circuit rejected the underlying proposition that the report by a physician who never examined the claimant has little probative value. "[T]o attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at its best." *Nelson v. Heckler*, 712 F.2d 346, 348 (8th Cir.1983). Dr. Randall never examined plaintiff, and therefore, his evaluations are entitled to little, if any, weight. They can not, standing alone, constitute substantial evidence. The non-examining physician's reports can not constitute substantial evidence in this case.

All of the physicians who examined plaintiff found him disabled to some degree. The plaintiff's treating physician, Dr. Lapalorcia, as well as the attending neurologist, Dr. Jacobsen, concluded plaintiff is totally disabled. Even the Secretary's consultants, Drs. Weiss and Zaretsky, were not of the opinion that plaintiff retained the capacity to perform the full range of light work or even sedentary work. The ALJ disregarded the conclusion of Dr. Weiss and drew her own conclusions from his report. She likewise drew her own medical opinion from the CAT scan. The only report which supports the ALJ's determination was by Dr. Randall and he never examined plaintiff. The Secretary's determination is not supported by substantial evidence.

Nor can the consulting doctors observation that plaintiff voluntarily restricted his motion, with Dr. Medley's stating that plaintiff, although in pain, was exaggerating the degree of pain he was experiencing constitute substantial evidence. *See Rivera v. Bowen*, 641 F.Supp. 486 (S.D.N.Y.1986) (complaints of pain were improperly discounted by ALJ in determining whether claimant had capacity to perform sedentary work). The standard for evaluating pain requires evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to alleged pain. 42 U.S.C. § 423(d)(5)(A); *see, e.g., Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986); *Cameron v. Bowen*, 683 F.Supp. 73 (S.D.N.Y.1988). There was no dispute among the many physicians that plaintiff was experiencing pain. The only contradictions were in the amount of pain experienced. When a consulting physician sees a claimant on only one occasion and his evidence is conflicting with the findings of the treating physician and gives little weight to subjective symptoms without stated reasons, these medical opinions are entitled to little weight. *See Brand v. Secretary of HEW*, 623 F.2d 523, 527 n. 6 (8th Cir.1980). Indeed, the tendency of consultative physicians to ignore, or to give only passing consideration to subjective symptoms without stated reasons, is one of the reasons underlying the rule that consultative opinions are entitled to lesser weight than those of treating physicians. *See, e.g., Ledoux v. Schweiker*, 732 F.2d 1385, 1388 (8th Cir.1984). It cannot be used as a means of strengthening the consultative doctors' report.

**3.** In *Schisler II,* the Court reviewed the District Court's revision of a draft Social Security Ruling embodying the "treating physician rule." The Court noted that a previous decision, *Havas v. Bowen*, 804 F.2d 783 (2d Cir.1986), did contain language to justify the statement concerning the weight to be given non-examining physicians' opinions. Nevertheless, the sentence in question was deleted because the qualification "in most situations" was not derived from that opinion and was felt to be ambiguous. Addi-

tionally, the statement in *Havas* was dictum and the Court felt the Social Security Rule in issue should "contain nothing not clearly authorized by our caselaw." However, on rehearing the language was restored, the Second Circuit noting it had failed to consider *Hidalgo v. Bowen*, 822 F.2d 294 (2d Cir.1987), which held that the opinion of a non-examining doctor, by itself, cannot constitute substantial evidence to override the treating physician's diagnosis.

Nor has the Secretary sustained his burden on the basis of the ALJ's observations of plaintiff at the hearing. Although an ALJ may take into account her observations of the claimant at the hearing, *see Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979); *Artrip v. Bowen,* 651 F.Supp. 376, 381 (S.D.N.Y.1987), in this instance the ALJ's observations add nothing to the evaluation. The ALJ stated that "the claimant did not really need a cane and his contentions that he could not sit for long periods were belied by his capacity to sit down during the hearing lasting almost half an hour." (Tr. 15). Yet, the medical opinions had already taken into account that the claimant did not always need a cane in reaching their conclusions. (Tr. 143–44, 206–14). Nor did any physician state that plaintiff could not sit for under half an hour. The ALJ's observation that plaintiff sat through the hearing without apparent pain, being that of a lay person, is entitled to limited weight, *see Carroll v. Secretary of Health and Human Services,* 705 F.2d 638 (2d Cir.1983), and since less than a thirty-minute period was involved it is not inconsistent with the medical evidence.

### CONCLUSION

In conclusion the decision of the ALJ is contrary to the facts established by the record and cannot stand. The ALJ's decision is not supported by substantial evidence and therefore the conclusion of the treating physician is binding. Accordingly, the judgment denying plaintiff benefits under the Act is reversed and the case is remanded for the calculation of benefits.

SO ORDERED.