**Dan HAVAS, Plaintiff-Appellant,**

**v.**

**Otis BOWEN, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 1523, Docket 86–6090.**

United States Court of Appeals, Second Circuit.

Argued July 18, 1986.

Decided Oct. 31, 1986.

Ira Mendleson, III, Albany, N.Y. (Buckley & Mendleson, Albany, N.Y., of counsel), for plaintiff-appellant.

Cornelia Dude, Asst. Regional Counsel, U.S. Dept. of Health and Human Services, (Ronald E. Robertson, Gen. Counsel, Barbara Lewis Spivak, Deputy Chief Counsel, Dept. of Health and Human Services, Frederick J. Scullin, Jr., U.S. Atty., for N.D. N.Y., of counsel), for defendant-appellee.

Before WINTER and MAHONEY, Circuit Judges, and ZAMPANO,* Senior District Judge.

WINTER, Circuit Judge:

Once again we address an appeal from a denial of Social Security disability benefits by the Secretary of Health and Human Services on a factual record that implicates the so-called "treating physician" rule. Notwithstanding assurances that the Secretary adheres to this rule as his national policy, *see Stieberger v. Bowen*, 801 F.2d 29, 36 (2d Cir.1986), *Schisler v. Heckler*, 787 F.2d 76, 83 (2d Cir.1986), the record in the instant case discloses no awareness of that rule among the relevant Social Security Administration adjudicators. We therefore reverse and remand.

Dan Havas injured his back on January 17, 1983, while operating a snow blower in the course of his employment as supervisor of a work crew for the New York State Department of Environmental Conservation. He was then 57 years old. Havas sought treatment for back pain from Dr. Edwin G. Mulbury, his general physician, who referred him to Dr. Brian O'M. Quinn, an orthopedist. Dr. Quinn determined that Havas was suffering from acute "L4–5 disc disease on the left side" as well as from chronic "degenerative disc and joint disease in the low back." At a subsequent visit, Dr. Quinn found that Havas' pain had been reduced significantly after a month of bed rest. The orthopedist noted that Havas could attempt to return to work but cautioned that "[i]t remains to be seen whether he can manage this on a regular basis." Havas was then referred back to Dr. Mulbury for follow-up care.

Havas resumed work in August 1983. He was no longer required to do any lifting or other heavy labor. He was, however, required to spend much of his workday making deliveries in a state pick-up truck. He retired in June 1984, claiming that his back pain had been exacerbated by the extensive driving now demanded by his job. He thereupon sought Social Security disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433 (1982 & Supp. III 1985).

The Administrative Law Judge ("ALJ") denied Havas' application for disability benefits on the ground that, while "[t]he medical evidence establishes that [Havas] has degenerative arthritis of the lumbosacral spine," this impairment "does not prevent him from performing his past relevant work as a supervisor of a State park crew." Decision of ALJ at 4. The Appeals Council denied review, and Havas appealed to the United States District Court for the Northern District of New York pursuant to 42 U.S.C. § 405(g) (1982). On April 3, 1986, Judge McCurn adopted a magistrate's recommended ruling affirming the Secretary's decision and dismissing Havas' complaint.

The record contains reports by Dr. Mulbury and Dr. Quinn. The most significant of these reports for present purposes is the "Workmen's Compensation Board Progress Report" submitted by Dr. Mulbury on or about May 12, 1984, approximately one month after Havas' retirement. The report concluded that Havas would "[n]ever" be able to resume his regular work.

The record also includes reports from two consulting physicians, Dr. Janina Foltyn and Dr. Joseph J. Fay, both of whom agreed with Dr. Quinn's diagnosis of degenerative disease of the lumbosacral spine. The consulting physicians, who not-

---

* The Honorable Robert C. Zampano, Senior United States District Judge for the District of Connecticut, sitting by designation.

ed that Havas had already retired at the time of their examinations, expressed no opinion as to whether Havas would ever be able to return to his former employment. However, Dr. Fay did opine that Havas had sustained "a mild to moderate partial permanent disability."

In addition, the record contains statements by Havas at his hearing before the ALJ complaining of "constant[ ], continuous" pain in his lower back that became more intense whenever he was required to sit, stand, or drive for a prolonged period. Havas had given similar descriptions of his pain to the two consulting physicians. There is nothing in the doctors' reports to suggest that they did not fully credit Havas' allegations of pain.

## DISCUSSION

A claimant is entitled to Social Security disability benefits if unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1982). Briefly stated, the administrative inquiry first determines whether a claimant is able to perform his or her regular employment. If the claimant can, the inquiry is at an end, and benefits are denied. If the claimant cannot perform his or her regular employment, a determination of whether the claimant can perform other gainful work is made. *See* 20 C.F.R. §§ 404.1520, 416.920 (1986). Because the ALJ determined that Havas could continue in his former employment, the second determination was never made.

■ A determination by the Secretary that an individual is not disabled is conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (1982); *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28

L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). In reviewing district court decisions in disability cases, we undertake our own plenary review of the administrative record to determine whether substantial evidence supports the Secretary's denial of benefits. *See Valente v. Secretary of HHS*, 733 F.2d 1037, 1041 (2d Cir.1984). Accordingly, "our focus is not so much on the district court's ruling as it is on the administrative ruling." *Id.*

■ Some time ago, we adopted the so-called "treating physician" rule whereby the medical opinion of the doctor who treated the claimant is given greater weight relative to other medical evidence before the Secretary. According to this rule,

a treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder.

*Schisler v. Heckler*, 787 F.2d at 81 (citing *Bluvband*, 730 F.2d at 892–93; *Aponte v. Secretary of HHS*, 728 F.2d 588, 591 (2d Cir.1984); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n. 2 (2d Cir.1983); *Gold v. Secretary of HEW*, 463 F.2d 38, 42 (2d Cir. 1972)).

The merits of the treating physician rule are not at issue in the present case. This panel is bound by our prior decisions. While the Secretary understandably might disagree with the rule, he has made no attempt to take the issue to the Supreme Court. He also denies that he is following a policy of nonacquiescence, *Stieberger,*

801 F.2d at 36, and vigorously professes to follow the rule in adjudicating all disability claims. *See Schisler,* 787 F.2d at 83.

Notwithstanding this seemingly broad area of agreement, the ALJ's decision made no express, implied, or even oblique reference to the treating physician rule. That he discounted Dr. Mulbury's opinion (while misstating Dr. Quinn's) is evidenced only by his conclusion that Havas could return to work, not by any discussion of the weight of Dr. Mulbury's opinion vis-a-vis other evidence in the record. The Appeals Council summarily denied review.

We have reviewed the record and conclude that there is no substantial evidence to refute Dr. Mulbury's conclusion that Havas cannot return to his job. Had the treating physician rule been applied, therefore, the Secretary would have been bound by that opinion.

Dr. Quinn, who last saw Havas on May 24, 1983, concluded that Havas was suffering from a disease that was both "chronic" and "degenerative." That diagnosis suggests that Havas might well have been more impaired in 1984 than he was when Dr. Quinn treated him in 1983. Indeed, Dr. Quinn merely noted that Havas was returning to work on a trial basis and referred him back to Dr. Mulbury for follow-up care. Dr. Quinn thus did not offer an opinion as to whether Havas was disabled one year later.

Moreover, Dr. Fay and Dr. Foltyn concurred in the diagnosis that Havas was suffering from degenerative disease of the lumbosacral spine, and expressed no opinion as to whether Havas could have remained at his regular job after April 1984. The ALJ made no mention of Dr. Fay's conclusion that Havas suffered from "a mild to moderate partial permanent disability of the lower spine," a finding more consistent with Dr. Mulbury's conclusion that Havas could not return to his former job than with the ALJ's conclusion that Havas had no disabling impairment. In addition, while the ALJ made findings that Havas could walk, move his spine, and raise his legs, he discounted Dr. Foltyn's observations that Havas "limp[ed] on the left because of pain," that he could touch his hands to his knees only "with pain in the left lumbosacral area," and that he could raise his left leg only "with pain."

The mere fact that the consulting physicians did not expressly state that Havas should refrain from extensive driving, whereas one of them stated that he should not engage in "heavy lifting" or "bending activities," hardly constitutes substantial evidence that Havas could perform the activities required by his former job. Indeed, because these doctors knew that Havas was already retired at the time of their examinations and was no longer driving for prolonged periods, there was no reason to include such a restriction in their reports.[1]

■ The record also contains the reports of two other physicians, Dr. Ralph S. Brown and Dr. Judith Bodnar, neither of whom examined Havas or specializes in orthopedic medicine. They opined that Havas was capable of returning to work. However, the opinions of nonexamining medical personnel cannot in themselves constitute substantial evidence overriding the opinions of examining physicians. *See Martin v. Secretary of HEW,* 492 F.2d 905, 907–08 (4th Cir.1974); *Landess v. Weinberger,* 490 F.2d 1187, 1190 (8th Cir.1974); *Mefford v. Gardner,* 383 F.2d 748, 759 (6th Cir.1967); *Ehrenreich v. Weinberger,* 397 F.Supp. 693, 697 (W.D.N.Y.1975). Furthermore, the ALJ did not refer to those reports.

1. It appears that the State of New York decided to award Havas disability and workers' compensation benefits after evaluating the reports of the treating and consulting physicians. As we have previously held, "[w]hile the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered." *Cutler v. Weinberger,* 516 F.2d 1282, 1286 (2d Cir.1975); *see also Hankerson v. Harris,* 636 F.2d 893, 896–97 (2d Cir.1980).

■ In sum, there is no substantial evidence in the record creating a "genuine conflict[ ]," *Schisler*, 787 F.2d at 81, with Dr. Mulbury's opinion that Havas can no longer perform his past work. We therefore remand to the Secretary for a determination as to whether Havas "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (1982 & Supp. III 1985).[2]

This case underlines the need for our recent order in *Schisler* requiring the Secretary to "state in relevant publications ... that adjudicators at all levels, state and federal, are to apply the treating physician rule." 787 F.2d at 84. The ALJ in the instant case was oblivious of his obligation to apply the treating physician rule as the policy adopted by the Secretary. His ignorance of the Secretary's policy on this issue has, as in other cases, resulted in "unnecessary delay to [a] claimant[ ] and unnecessary review by the courts." *Id.* Havas, who is now 60 years old, has pursued disability benefits for more than two years, and the end is not in sight. Furthermore, the administrative failure to apply the proper legal standard has needlessly taxed the resources of the courts, which may be required to review Havas' claim yet again before it is finally resolved. If the many cases remanded in *Schisler* pursuant to the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98-460, 98 Stat. 1794 (1984), *see* 787 F.2d at 82-85, are adjudicated without regard to the agreed upon legal standard concerning the opinions of treating physicians, we will be faced with countless numbers of cases similar to the present one.

Reversed and remanded to the district court with directions that the matter be remanded to the Secretary for further proceedings consistent with this opinion.

---

2. Havas urges us to find, on the basis of his advanced age, limited education and lack of transferrable job skills, that he is incapable of engaging in any substantial gainful employ- ment. However, because the record is incomplete as to what skills, if any, Havas could transfer to another job, we decline to reach this issue.