**Rukiye WEFALI, Plaintiff,**

v.

**SECRETARY of the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

No. CV 87–2026.

United States District Court, E.D. New York.

June 22, 1988.

Yannacone & Yannacone by Michael T. Sullivan, Patchogue, N.Y., for plaintiff.

Andrew J. Maloney, U.S. Atty. by Michelle J. Ritholz, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Rukiye Wefali ("Plaintiff") brings this action under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), for review of a final determination of the Secretary of Health and Human Services ("Secretary") denying plaintiff's application for a period of disability and disability insurance benefits. The parties now cross-move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In the event that this Court rules against the plaintiff on her motion for judgment on the pleadings, plaintiff moves for a remand of this case for further proceedings pursuant to 42 U.S.C. § 405(g).

Plaintiff first applied for disability insurance benefits on January 16, 1986, alleging an inability to work since June 11, 1985 due to a back problem, fractured spine, and constant pain. The application was denied initially and again upon reconsideration. Plaintiff then requested a hearing, which was held on November 13, 1986, before an Administrative Law Judge ("ALJ"), who considered the case *de novo*. In an opinion dated December 18, 1986, the ALJ found that although plaintiff had sustained a compression fracture in her spine and had lumbar muscle strain, she did not have an impairment or combination of impairments listed in (or medically equal to one listed in) 20 C.F.R. Part 404, Subpt. P., App. 1. While plaintiff's condition left her unable to perform strenuous exertional activity, the ALJ found that plaintiff's allegations of debilitating pain were not credible and that she could return to her past relevant work as a countergirl at a hospital coffee shop. Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act. The decision of the ALJ became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review in a notice dated April 22, 1987.

### I.

Plaintiff, a 62 year old woman, was born in China and completed ten years of school there but did not attend school in this country. She has been a resident of the United States since 1960 and has held three different jobs since that time. From 1967 to 1973 plaintiff was employed as a machine operator in a factory; from 1973 to 1979 she was a countergirl in a hospital coffee shop; and from 1981 to June of 1985 she was a nurse's aide. As a nurse's aide, the plaintiff was required to frequently lift and carry over fifty pounds, including the lifting of patients. It was in this last position that plaintiff suffered an injury when she fell while assisting a patient in a nursing home. As a result, plaintiff was hospitalized at the Central Suffolk Hospital in Riverhead, New York, from the date of injury (June 11, 1985) to June 22, 1985 for a

compression fracture of the L–1 vertebrae in her spine. The plaintiff testified that she has consequently suffered constant back pain, impeding her ability to sit, stand, and walk for any length of time. The medical evidence submitted in support of plaintiff's claim is described below.

## II.

On the hospital admitting report, orthopedic surgeon Dr. Richard Hastings noted the fracture of L–1 and had the plaintiff fitted with a corset with which she eventually became ambulatory. Dr. Hastings continued to treat the plaintiff after her discharge, and on a report to the Worker's Compensation Board dated July 22, 1985, Dr. Hastings indicated that the plaintiff was totally disabled. In his notes of September 20, 1985, Dr. Hastings stated that he could not understand the plaintiff's continued complaints of pain despite the fact that her x-rays "looked good," (although on a prescription pad note of October 23, 1985, Dr. Hastings stated that the plaintiff was "considered to still be disabled at this time.") In the notes of his next examination of the plaintiff, dated October 29, 1985, Dr. Hastings indicated the plaintiff's continued complaint of pain and his opinion that her bones "just don't look that good." Consequently, Dr. Hastings referred the plaintiff to Dr. Antonio Flores, a neurologist.

Having initially examined the plaintiff on October 31, 1985, Dr. Flores indicated on a Worker's Compensation Board report dated November 21, 1985, (following his second examination of the plaintiff), that Mrs. Wefali was totally disabled. In addition, Dr. Flores stated on this same form that the plaintiff was "[s]till with back pain," and that she was wearing a corset all the time. At this point, Dr. Flores prescribed both Feldene and Soma for the plaintiff. In a letter to Dr. Hastings, Dr. Flores stated that as of the plaintiff's January 4, 1986 visit she was still complaining of lower back pain, and was advised to take off the brace for as long as possible and eventually remove it. Dr. Flores also stated in this letter that he did not think the plaintiff would go back to her old job, as "she claimed that she does not want to do that anymore."

In a consultative examination of March 3, 1986, Dr. Manouchehr Amini, a board-certified surgeon, concluded that the plaintiff suffered from a compression fracture of L–1 with slight osteoarthritic degenerative disease changes of the lumbosacral spine. Dr. Amini also assessed the plaintiff's functional capacity and stated that the plaintiff:

should be able to sit for about 45 minutes to one hour; stand for ½ hour; walk about 4–6 blocks and repeat this four times in the course of an eight hour working day. Should be able to lift and carry up to five pounds on and off. Should be able to bend occasionally; climb occasionally; should not squat or crawl. Grasping and fine manipulation is okay. Pushing and pulling of light objects is possible.

Dr. Flores completed another examination of the plaintiff in July of 1986, and on a report to the Worker's Compensation Board, he indicated that the plaintiff was still totally disabled, stating his impression of "recurring low back pain syndrome." Plaintiff was examined by Dr. Zeki Uygur on October 18, 1986, and Dr. Uygur indicated on a Worker's Compensation Board report that the plaintiff was totally disabled and should refrain from working.

At the hearing before the ALJ, Dr. Gilbert Young, an orthopedic surgeon, testified as a medical advisor. Based on his review of the record, Dr. Young testified that the plaintiff did not meet the Social Security listing of impairments for a vertebrogenic disorder because she had not demonstrated muscle spasm, radicular distribution, significant motor loss, significant motor weakness, and experienced neither sensory nor reflex loss. Stating that the plaintiff had sustained a compression fracture, Dr. Young testified that the plaintiff could sit and stand each for 45 minutes at a time intermittently for six hours in an eight hour day. In addition, Dr. Young testified that the plaintiff could occasionally lift 20 pounds, but frequently lift 10–15 pounds; carry 10 pounds frequently and 15 pounds occasionally, and only bend occasionally.

## III.

In a decision dated December 18, 1986, the ALJ found that the plaintiff was not entitled to a period of disability and disability insurance benefits. The ALJ concluded that the plaintiff was not disabled based, principally, on the testimony of the medical advisor, who as stated above, opined that plaintiff's impairment did not meet, nor was it the medical equivalent of, the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1. Consequently, the ALJ determined that the question of plaintiff's disability then turned on her residual functional capacity. Since the ALJ, based primarily again on the medical advisor's testimony, reasoned that the plaintiff was capable of performing her past relevant work as a countergirl in a hospital coffee shop, her application for a period of disability and disability insurance benefits was denied.

The ALJ also relied upon Dr. Hastings' note following the September 20, 1985 examination. That note stated that the doctor could not understand why the plaintiff still complained of pain going up into her neck and across the shoulders. In addition, the ALJ took note of the doctor's comments of the same date which read that the plaintiff's x-rays looked good, and that Dr. Hastings "could not discern any problems." The ALJ further observed that under the care of Dr. Flores, the plaintiff was ambulating without the use of a device by May, 1986, (although the ALJ acknowledged that both Dr. Hastings and Dr. Flores had indicated on Worker's Compensation reports that the plaintiff was totally disabled). The ALJ qualified the value of those reports with the fact that in a February, 1986 letter to Dr. Hastings, Dr. Flores, agreeing with Dr. Hastings, stated that he did not think that the claimant would go back to her old job (as a nurse's aide) because she claimed she did not want to do it anymore.

The ALJ also considered the March 1986 consultative examination of the plaintiff by Dr. Amini. Although the ALJ acknowledged the doctor's opinion that the plaintiff "had limitations of sitting, standing, walking, lifting and carrying of a degree so as to preclude any sustained work activity," the ALJ concluded that Dr. Amini's opinion was not supported by the "rather minimal abnormal findings on his examination or by those reported by the treating physicians." The ALJ accepted the medical advisor's statement that the requirements of 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.05 (C) were neither met nor equalled by the plaintiff's condition, based on the medical advisor's interpretations of the clinical findings of the treating physicians. Additionally, the ALJ noted Dr. Young's opinion that the plaintiff had the residual functional capacity compatible with that required to engage in light work as defined in 20 C.F.R. § 404.1567(b).

The ALJ thus concluded that in consideration of the "... minimal clinical findings of pathology," he could not accept as credible the plaintiff's allegations of pain; nor could he accept the consulting physician's assessment of plaintiff's residual functional capacity. The ALJ stated that "corresponding with the medical advisor's testimony, it is clear that an impairment or combination of impairments has not been demonstrated to be of the persistence, pervasiveness, severity and duration as to reasonably result in limitations precluding light work."

## IV.

The only issue for review is whether the ALJ's decision is supported by substantial evidence on the record as a whole. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Absent any legal error, the Secretary's decision must be upheld if supported by substantial evidence. *Dumas v. Schweiker*, 712 F.2d 1545 (2d Cir.1983). To find substantial evidence, the district court should look to the entire record, including both contradictory evi-

dence and, in addition, evidence from which conflicting inferences can be drawn. *Mongeur v. Heckler,* 722 F.2d 1033 (2d Cir.1983).

■ It is firmly established in the Second Circuit that when evaluating medical evidence, the expert opinions of treating physicians as to the existence of a disability are binding on the Secretary unless contradicted by substantial evidence to the contrary. *Bluvband v. Heckler,* 730 F.2d 886, 892 (2d Cir.1984) (quoting *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978)). Even when contradicted, the opinion of the treating physician is entitled to great weight. *Bluvband v. Heckler,* 730 F.2d at 895. Moreover, there is no requirement that the physician's "medical opinion must necessarily be supported by 'objective' clinical or laboratory findings." *Cutler v. Weinberger,* 516 F.2d 1282, 1287 (2d Cir. 1975); *Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63, 65 (2d Cir.1980).

■ Here, the Secretary's decision is not supported by substantial evidence in light of the entire record as a whole. Both Dr. Hastings and Dr. Flores indicated on Worker's Compensation reports (dated July 22, 1985; November 21, 1985 and July 15, 1986) that the plaintiff was totally disabled. Although these reports are not dispositive where conflicting evidence is presented, they do represent the treating doctors' opinions and should be given weight. Indeed, in *Havas v. Bowen,* 804 F.2d 783, 784 (2d Cir.1986) the Court of Appeals for the Second Circuit made the relevant observation that among the reports by treating physicians in the record, "[t]he most significant ... for present purposes is the 'Worker's Compensation Board Progress Report.'" As mentioned above, Dr. Hastings also indicated his belief that the plaintiff was "considered to still be disabled" on a prescription pad note approximately four months after her admission and release from the hospital.

The ALJ's opinion gave too much weight to the testimony of the non-examining medical advisor above the opinions of two treating physicians. *See, e.g., Havas v.*

*Bowen,* 804 F.2d at 786 ("Opinions of non-examining medical personnel cannot in themselves constitute substantial evidence overriding the opinions of examining physicians."); *Murdaugh v. Secretary of Department of Health and Human Services,* 837 F.2d 99, 101 (2d Cir.1988) ("[h]earing judge's refusal to accord [treating physician's] opinion extra weight misapprehends the treating physician rule.") The ALJ maintained his preference for the medical advisor's opinion despite the conflicting report of the consulting physician, Dr. Amini, who, the ALJ concedes, determined after his examination of the plaintiff that the limitations of her abilities were severe enough to preclude any sustained work activity.

The ALJ further discounted the treating physician's opinions when taking particular note of the fact that Dr. Flores, in a letter to Dr. Hastings, agreed with Dr. Hastings that the plaintiff did "not think she would return to her old job only because she didn't want to." It is curious that the ALJ considered this to be very revealing when he ultimately concluded that plaintiff did not, in any event, have the residual functional capacity to resume her post as a nurse's aide. The ALJ's decision regarding the plaintiff's residual functional capacity was based almost entirely on the testimony of the non-examining medical advisor despite the considerable amount of contradictory evidence from two treating physicians as well as the two other medical opinions based on examinations of the plaintiff. In addition, the ALJ did not ask the plaintiff to clarify or explain her comment about returning to work. This line of questioning might have proved helpful in light of the fact that the plaintiff indicated on her disability report that she had limited ability to speak or write in English.

The ALJ also seemed to find troubling Dr. Hastings' statement, following a September 20, 1985 examination, that he could not understand the plaintiff's continued pain because her x-rays "looked good." The ALJ chose to make no mention, however, of Dr. Hastings' notes of the following examination, dated October 29, 1985, at

which he wrote that the plaintiff's bones did "not look that good," and consequently felt the need to refer the plaintiff to Dr. Flores. Throughout his opinion, the ALJ does not even mention the opinion of the fourth examining physician, Dr. Uygur, who, like the treating physicians referred to above, concluded on a Workmen's Compensation Board report dated October 23, 1986, that the plaintiff was totally disabled, and specifically noted on the form "no work."

In sum, the ALJ's opinion consists of isolated references to the record that disregard, without adequate justification, the treating physician rule. This Court has little difficulty, therefore, holding that the ALJ's findings were not based on substantial evidence on the record.

## CONCLUSION

After review of the entire record, the Court concludes that the Secretary's final determination is not supported by the requisite substantial evidence. Therefore, the determination of the Secretary is reversed and the defendant's motion for judgment on the pleadings is denied. The plaintiff's motion for judgment on the pleadings is granted, with directions to the Secretary consistent with this opinion.

SO ORDERED.