**Shirley HAMM, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. No. 85–1391C.**

United States District Court,
W.D. New York.

Jan. 25, 1989.

Neighborhood Legal Services (Alan B. Block, of counsel), Buffalo, N.Y., for plaintiff.

Dennis C. Vacco, U.S. Atty. (Marc Gromis, Asst. U.S. Atty., and Kelley Omel, Law Student, of counsel, Michael A. Battle, Asst. U.S. Atty., on the brief), Buffalo, N.Y., for defendant.

## INTRODUCTION

CURTIN, District Judge.

Plaintiff Shirley Hamm is seeking review of the decision of the Secretary of Health and Human Services ("Secretary") denying her application for Social Security Disability Insurance benefits under 42 U.S.C. § 423 *et seq.* The Secretary found that the plaintiff, although suffering from degenerative back and neck injuries, was capable of performing sedentary work such as she had in the past and, consequently, was not disabled within the meaning of the Social Security Act.

## FACTS

From December, 1961, to December, 1983, the plaintiff was employed by the McKesson Drug Company. Including the time she previously had worked for the company before briefly moving from the Buffalo area, the plaintiff worked for the company a total of over twenty-four years. Her responsibilities included taking phone orders and typing, and she eventually became a supervisor. Transcript ("T") at 29–31, 80. Significantly, her duties required her to sit virtually all day. T at 93.

The plaintiff, who initially developed weakness in her back when she suffered from polio while in high school, began to experience severe back and neck pain in either 1979 or 1980, and at one point the pain became so intense that the plaintiff could not get out of bed without help. After the onset of the pain, the plaintiff required cortisone shots in her arms in order to continue typing at work. T at 48. She was treated by a chiropractor three times a week for approximately three months, but ended her treatments when her treating physician, Dr. James Dewar, advised her that he did not believe the treatments were helping her. T at 34, 37–38, 43.[1] The plaintiff's pain continued to increase, and she was forced to miss six weeks of work in 1981. T at 38. Pursuant to the advice of an orthopedist recommended by Dr. Dewar, the plaintiff began wearing a corset in 1981, and she apparently has worn it every day since. T at 43–45, 94, 95, 116.

---

1. The plaintiff apparently resumed chiropractic treatments at some point, because a letter written by Dr. Dewar indicates that as of June 17, 1983, the plaintiff had been receiving such treatments intermittently for at least four years. *See* T at 116.

The plaintiff described her pain, which she feels daily, as extending from her lower back to her neck and shoulders. She stated that sometimes she experiences pain so intense that it feels like an "electrical shock" and requires immediate rest. She also suffers from periodic muscle spasms in her lower back that prevent her from moving at all. T at 36–37, 39–40, 43, 45, 51, 86. She also suffers from arthritis in her feet. T at 35, 46.

The pain restricts her daily activities in many significant ways. Each morning she must bathe in hot water for approximately half-an-hour, and some days the pain is so intense that she is unable to dress herself. T at 36–39. Her ability to lean and to bend forward has become so restricted that she can read only for short periods, T at 37, 45–47, and can do only light housework. T at 35, 43, 45, 47, 52–53.[2] The record indicates, however, that even light housework aggravates the plaintiff's back considerably and requires a great deal of rest. T at 102, 117. In addition, she has been forced to give up hobbies such as knitting, needlepoint, woodworking, and gardening. T at 49–50. She is able to do some shopping, but can walk no more than a short distance to a neighborhood grocery to do so,[3] and she apparently can carry no more than a few light items. T at 35, 42, 48–49. Although she used to enjoy long trips in her car, she now can drive for no more than forty-five minutes. T at 41. She can stand only for about half-an-hour before developing pain in her feet and left leg that forces her to sit, and she can sit only for about forty-five minutes before developing pain in her arms and left leg that forces her to stand. T at 40–42; see also T at 84. When she sits, moreover, she is unable to bend or to lean forward without feeling pain in her neck and shoulders, and the pain is sometimes so strong that she is unable to concentrate. T at 41.

The plaintiff continues to see her doctor regularly, although the frequency of the visits appears to vary with the severity of her pain. T at 33. Although she takes medication daily and uses a heating pad constantly, T at 37, 92, 117, her pain "never stops," T at 51, 92, 116–17; see also T at 36–37, and approximately once a month she is in too much pain to leave the house at all. T at 50; see also T at 86. The pain affected her ability to sit and to concentrate at work, and at the time of her hearing before an Administrative Law Judge ("ALJ") on May 9, 1985, her pain was much worse than it had been when it began in 1979 or 1980. T at 44–46, 116.

The plaintiff stopped working on December 13, 1983, although the record is not clear regarding the precise reason why. During the hearing, the plaintiff stated that new management had "eliminated" her job. However, when she began to explain the circumstances of her discharge, indicating that her health problems may have been a factor, the ALJ interjected that he understood her to mean that new management at the company was simply "making some changes." T at 31.

Dr. Dewar began treating the plaintiff in April, 1980, and his records, which include independently administered and evaluated x-rays, indicate that the plaintiff suffers from a degenerative ailment of the back and neck. Specifically, the plaintiff suffers from progressive osteoarthritis of the cervical and lumbar spines, as well as a degenerative disc disease. T at 97–98; see also 115–17. In Dr. Dewar's opinion, the plaintiff is totally disabled and never will be able to resume working because she simply is unable to spend eight hours in an upright position. T at 97, 98, 117. He estimated that the plaintiff can stand or walk for a total of four hours a day, and can sit without interruption for three hours a day. T

**2.** For the rest of her housework and yard work, she relies on help from other family members who do not live with her and a boy who lives in the neighborhood. T at 27–28, 35, 45, 50.

At the time of her hearing before an Administrative Law Judge, the plaintiff was living only with her eighty-year-old mother. Her mother also owned a home in Canada, for which the plaintiff got help from several people with the housework and yard work. T at 52–53.

**3.** The plaintiff described the grocery store as being "seven houses" away from her mother's house; she stated that she never walks farther than that. T at 42.

at 118. However, Dr. Dewar noted that the plaintiff used to develop such severe back pain after three or four hours at work that she would have to either take medication or lie down. T at 116.[4] He also found that it was "impossible" for the plaintiff to sit or to stand for prolonged periods. T at 98.

After the administrative hearing, the ALJ found that the plaintiff was not disabled within the meaning of the Social Security Act. Although in his decision he recognized that the plaintiff had a degenerative condition of the back and spine, stated that he "accept[ed] her complaints of pain," and found that the plaintiff was impaired, he nonetheless found that she could perform the type of sedentary work she had done while working at her previous job. T at 10–14.

## DISCUSSION

■ The Second Circuit has repeatedly and consistently held that the opinion of a claimant's treating physician regarding medical disability—that is, "diagnosis and nature and degree of impairment"—is

> (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder.

*Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986) (*"Schisler I"*), *after remand*, 851 F.2d 43 (2d Cir.1988) (*"Schisler II"*). *See also Hidalgo v. Bowen*, 822 F.2d 294, 296–97 (2d Cir.1987); *Bluvband v. Heckler*, 730 F.2d 886, 892–93 (2d Cir.1984); *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 42 (2d Cir.1972).

In the present case, the ALJ did not mention, and apparently did not consider, the so-called "treating physician rule." Rather, he seems simply to have disagreed with Dr. Dewar's opinion. There is, however, no medical evidence in the record contradicting either the doctor's diagnosis or his opinion regarding the plaintiff's ability to work. Moreover, Dr. Dewar's opinion is supported by clinical and laboratory findings, *see* T at 93–94, 97–98, 102–03, 115–19, neither of which is necessary for his opinion to be binding. *See, e.g., Bluvband v. Heckler*, 730 F.2d at 893.

Interestingly, the Secretary does not mention the treating physician rule in his brief, arguing instead that the decision below is supported by substantial evidence. In a recent case in which an ALJ did not mention the treating physician rule in his decision, the Secretary also argued that the ruling should nonetheless have been affirmed so long as it was supported by substantial evidence. The Second Circuit rejected this position, holding that, "[t]he history of litigation concerning the treating physician rule regrettably precludes our indulging the decision makers in [the Department of Health and Human Services] with a presumption that in cases such as this the treating physician rule was faithfully applied and merely not mentioned." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987). In the present case, the Secretary does not argue that the court should assume that the ALJ considered the treating physician rule; rather, by arguing that the ALJ's decision should be affirmed if it is supported by substantial evidence, the Secretary seems to suggest that the court should overlook the ALJ's failure to consider the rule. The court will not—indeed, cannot—do so.

Instead of discussing the treating physician rule, the ALJ noted that the plaintiff drives on a regular basis, cares for her

---

**4.** In his brief, the Secretary argues that "it is significant that, in a report dated September 11, 1984, [Dr. Dewar] stated that plaintiff was *only* prevented from doing heavy lifting or prolonged standing or sitting as of December 14, 1983 ([Transcript] 97–98)." Item 6 at 9 (emphasis added). In fact, Dr. Dewar simply had indicated that it was "impossible" for the plaintiff to do these things. Moreover, Dr. Dewar also indicated in the cited report that the plaintiff had developed "persistent" pain that required regular use of analgesic and anti-inflammatory medication. T at 98.

invalid mother, spends part of each summer at her family's summer home in Canada, and, when necessary, drives from her home in West Seneca, New York, to her physician's office in Port Colborne, Canada. T at 12–13. Even taken at face value, however, these factors hardly constitute substantial evidence contradicting Dr. Dewar's opinion. Furthermore, the ALJ's characterizations appear to be misleading. For example, the plaintiff testified that her ability to drive had been diminished significantly by her back and neck pain, and that one of the reasons she and her mother stayed in Canada during the summer was to be closer to their respective doctors. T at 41, 52–53. And there is no evidence in the record regarding the type of care provided by the plaintiff to her mother.

Although acknowledging that the plaintiff "has degenerative changes of the cervical and lumbosacral spine,"[5] the ALJ found that "[t]he claimant has worked with this condition in the past. There is no medical evidence showing any further progression of this physical condition." T at 13. In fact, the plaintiff's testimony that her pain was much worse at the time of the hearing than when it began in 1979 or 1980 is fully consistent with and supported by Dr. Dewar's assessment that she suffered from degenerative ailments of the back and neck.

It also appears that the ALJ did not give sufficient weight to the evidence of pain suffered by the plaintiff. The ALJ stated that, "even accepting [the plaintiff's] complaints of pain," he believed that she was able to return to her past work. T at 12–13. Yet, if the plaintiff's complaints of pain are accepted as credible, it is difficult to imagine how she reasonably could be considered able to perform her past work. For example, as indicated above, the plaintiff sometimes suffers muscle spasms in her lower back that are so acute that they prevent her from moving at all, and the pain she experiences from both sitting and standing is so severe and consistent that Dr. Dewar concluded that she simply is

unable to spend eight hours in an upright position. Moreover, although on appeal the Secretary appears to question the credibility of the plaintiff's descriptions of her pain, see Item 6 at 11–12, the record provides—in full satisfaction of the statutory requirements cited by the Secretary, see 42 U.S.C. § 423(d)(5)(A)—ample clinical and laboratory findings to support the plaintiff's testimony.

In short, the record does not contain substantial evidence contradicting the opinion of Dr. Dewar.

■ In light of the failure of both the ALJ and the Secretary to make any "express, implied, or even oblique reference to the treating physician rule," *Havas v. Bowen*, 804 F.2d 783, 786 (2d Cir.1986), it appears that no useful purpose would be served by remanding the present case for further proceedings. The Second Circuit's growing frustration with the failure of ALJ's to apply the treating physician rule properly is, of course, well-documented. See, e.g., *Schisler II*, 851 F.2d at 44–45; *Hidalgo v. Bowen*, 822 F.2d at 296–99; *Johnson v. Bowen*, 817 F.2d at 984, 986; *Havas v. Bowen*, 804 F.2d at 785–87; *Schisler I*, 787 F.2d at 82–85; *De Leon v. Secretary of Health and Human Services*, 734 F.2d 930, 937–38 (2d Cir.1984). Consequently, reversal without remand is appropriate precisely because of the Secretary's consistent failure to obey the law. This failure was repeated and magnified during the plaintiff's appeal of the ALJ's decision, as there is no reason why the Secretary, who has repeatedly professed acceptance of the treating physician rule, see, e.g., *Stieberger v. Bowen*, 801 F.2d 29, 36 (2d Cir.1986); *Schisler I*, 787 F.2d at 83–84, could not himself have remanded this case for reconsideration in light of the obvious and undisputed failure of the ALJ to apply the rule. Instead, he has forced yet another claimant to pursue costly and time-consuming litigation in federal court, and his own brief did not even mention the rule. See, e.g., *Schisler I*, 787 F.2d at 84 (criticizing the "unnecessary delay to claimants

5. The ALJ thus failed to recognize that Dr. Dewar had determined that the plaintiff also suffers from a degenerative disc disease. See T at 98.

and unnecessary review by the courts" caused by repeated failure of Secretary to apply the treating physician rule properly); *Havas v. Bowen*, 804 F.2d at 787 (same).[6]

Additionally and alternatively, the proof of disability before the court is sufficiently persuasive to render further evidentiary proceedings unnecessary. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980); *Dunbar v. Califano*, 454 F.Supp. 1261, 1268–69 (W.D.N.Y.1978).

Although the plaintiff apparently did not stop working on December 13, 1983, because of her ailments, she most likely was able to continue working as long as she did because she had become so accustomed to her routine and the environment at the company, as the severity of her condition indicates that she probably would have been unable to adapt to the unfamiliar conditions that a new job would bring. In any event, in light of the Secretary's consistent refusal to ensure that the treating physician rule was properly applied in this case and so many others, the plaintiff will be given the benefit of any doubt regarding the onset date of her disability.

There being no justification for the ALJ's failure to consider the treating physician rule, and there being ample evidence to support the unchallenged opinion of Dr. Dewar that the plaintiff is disabled, the decision of the Secretary is hereby reversed, and the Secretary is ordered to pay the plaintiff the full benefits she has requested with an onset date of December 14, 1983.

So ordered.

---

**6.** The court recognizes, however, that counsel for the Secretary laudably suggested at oral argument that, in order to spur the Secretary to action, the court could award interim benefits to the plaintiff if the case were remanded.