Jose VEGA, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

No. 87 CV 1124.

United States District Court, E.D. New York.

April 10, 1989.

Jose Vega, pro se.

James Catterson, Asst. U.S. Atty., of counsel (Andrew J. Maloney, U.S. Atty., E.D.N.Y.), Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is a *pro se* action brought under Section 205(g) of the Social Security Act, as amended ("Act"), 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services ("Secretary") that denied plaintiff's application for a period of disability and disability insurance benefits and Supplemental Security Income ("SSI") based on disability.

### PROCEDURAL HISTORY

An application for SSI benefits was filed by plaintiff on November 28, 1984 (Transcript of Administrative Proceedings ("Tr.") 65–74). His application was denied initially (Tr. 81–83) and on reconsideration (Tr. 91–93). Plaintiff requested a hearing to review the application. This request was granted and on April 17, 1986, a hearing was held (Tr. 33–64). The Administrative Law Judge ("ALJ") before whom plaintiff appeared considered the case *de novo*

and found that plaintiff was not under a disability (Tr. 8–15). The ALJ's decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on March 24, 1987 (Tr. 3–4).

## STATEMENT OF FACTS

Plaintiff is a twenty-seven year old single male who has graduated from high school and completed a vocational trade curriculum (Tr. 36–37). Plaintiff has past relevant work experience as a general helper in a window factory. His duties included spray painting window frames, smoothing the edges and packing windows (Tr. 37–38). In 1982, plaintiff was discharged from his job but no explanation was given by his employer (Tr. 38). Plaintiff claims he cannot work because he feels ill when he travels on trains and when he does heavy work (Tr. 55–56, 45).

Plaintiff lives with his mother and brother. He occasionally helps out with household chores. Plaintiff testified that he does not have many friends and spends his time watching television and listening to music (Tr. 45–47).

On September 10, 1982, plaintiff was admitted to Kingsboro Psychiatric Center because of violent behavior toward his mother. He was diagnosed as suffering from schizophrenia, paranoid type (Tr. 268–269). There were no further displays of violent behavior during his hospital stay and upon discharge, it was reported that his overall condition had improved (Tr. 267–270).

On January 7, 1985, plaintiff underwent a consultative psychiatric examination with Dr. Juan Fiko. Dr. Fiko could find no evidence indicating that plaintiff suffered from hallucinations or delusions and his diagnosis was possible schizophrenia, chronic undifferentiated (Tr. 126–127).

Mr. Paul Anderson, a psychiatric social worker interviewed plaintiff in March 1985 (Tr. 128–132). He found plaintiff to be alert and orientated to person, time and place. From his evaluation, Mr. Anderson concluded that there was no evidence of delusional or hallucinatory ideas.

On March 13, 1985, plaintiff began receiving weekly treatments from Dr. Caccavali at Doctor's Medical Center. Dr. Caccavali issued a psychiatric medical report on June 20, 1985. In the report he stated that plaintiff was quiet and cooperative, his affect was blunted and indifferent and that plaintiff denied suffering any hallucinations or delusions. Dr. Caccavali's diagnosis was schizophrenia, chronic paranoid.

Dr. Caccavali continued to treat plaintiff through December 1985 and reported that plaintiff was doing well with no evidence of psychosis (Tr. 230–240).

On October 7, 1985, plaintiff was seen by consulting psychologist Dr. Kaufman in relation to plaintiff's eligibility for a rehabilitation program. The doctor found plaintiff to be globally functioning on a borderline level of intelligence but that he was operating far below his true potential. He further reported that plaintiff had average mechanical insight and clerical ability. He described plaintiff as being a very well coordinated and productive worker with his hands. Dr. Kaufman recommended that plaintiff continue his day treatment program to increase his level of social interaction and that he be reevaluated in six months (Tr. 178–182).

In a Physician's Report for Claim of Disability Due to Physical Impairment dated January 29, 1986, Dr. Caccavali once again stated that there was no indication of hallucinations or delusions. The doctor's diagnosis of plaintiff remained the same, chronic paranoid schizophrenia. Dr. Caccavali also noted that plaintiff could sit and stand as required by a job and could walk a total of one hour in an eight hour day.

In addition, plaintiff could occasionally lift up to fifty pounds, carry up to twenty-five pounds and continuously lift and carry up to ten pounds. Plaintiff could use his hands for repetitive actions and fine manipulations and could use his feet for repetitive movements.

Furthermore, plaintiff was only restricted from participating in activities involving the operation of machinery and from driving a motor vehicle. However, plaintiff

could travel alone on a daily basis by either a bus or subway (Tr. 145–150).

Also in this report, Dr. Caccavali noted that plaintiff complained of occasional anxiety, insomnia and nausea related to travel. Dr. Caccavali stated that because of plaintiff's medication, he could not operate machinery and should not drive. Dr. Caccavali indicated that plaintiff had a moderate restriction of activities of daily living. The doctor found, however, that plaintiff could help with household chores, use public transportation, a public telephone and the post office. The doctor further noted that plaintiff's emotional condition seldom caused deficiencies in the timely completion of tasks commonly found in work settings and that it should not cause plaintiff to withdraw from work or work-like settings.

In a supplement to this report, Dr. Caccavali recanted some of his previous findings indicating that plaintiff did in fact experience hallucinations or delusions and that he exhibited incoherence. He also indicated that plaintiff exhibited emotional withdrawal with episodes of deterioration or decompensation causing withdrawal (Tr. 151–170).

At the April 17, 1986 hearing before the ALJ, Dr. Annaliese Pontius, a Secretary medical advisor, testified that the evidence consistently indicated symptoms of schizophrenia, paranoid type. The doctor felt this was manifested by hallucinations plaintiff experienced in 1983. These hallucinations were voices commanding him to kill his mother. It was further noted that these hallucinations were not current, but that plaintiff presently sees "little black things out of his eye" when he watches television. Dr. Pontius noted that visual hallucinations do not fit the pattern of schizophrenia. Additionally, Dr. Pontius felt that the treating physician's notes are inconsistent with respect to these incidents. Dr. Pontius concluded that there was no evidence of substance abuse or of an organic problem (Tr. 59–62).

## DISCUSSION

It is incumbent on the plaintiff to establish that he is disabled and unable to perform his past employment because of his impairments. *See Dumas v. Schweiker*, 712 F.2d 1545, 1550–51 (2d Cir.1983).

A determination by the Secretary that an individual is not disabled is conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). *See Havas v. Bowen*, 804 F.2d 783, 785 (2d Cir.1986). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

On evaluating the evidence, the Secretary is required to apply the "treating physician rule," which specifies that the medical opinion of plaintiff's treating doctor is binding on the fact finder unless contradicted by substantial evidence. *See Havas v. Bowen*, 804 F.2d at 785.

Although plaintiff has been diagnosed as suffering from schizophrenia, paranoid type, the medical evidence fails to establish that plaintiff's disorder prevents him from performing his past relevant work. Therefore, plaintiff can only be found disabled if his condition satisfies the requirements of 20 C.F.R. Part 404, Appendix 1, Section 12.03 of the Secretary's Regulations. These Regulations require plaintiff to demonstrate that he suffers from delusions, hallucinations or incoherence of speech. Additionally, plaintiff must suffer marked restrictions of daily activities, deficiencies of concentration resulting in frequent failure to complete tasks in a timely manner or repeated episodes of deterioration or decompensation in work or work-like settings. Alternatively, plaintiff may present a medically documented history of the aforementioned symptoms and show either: (1) episodes of deterioration or decompensation in situations causing withdrawal from that situation, or (2) present documentation of his inability to function outside a highly supportive living situation.

The evidence in the record just does not support such a finding. Doctors Fiko,

Kaufman and Pontius and Mr. Anderson all found that plaintiff did not suffer from such symptoms rising to the level required by the Regulations. Dr. Caccavali's diagnosis was consistent with those reached by the above-mentioned individuals until Dr. Caccavali changed his position in the January 29, 1986 report prepared for the Secretary. It is well established that it is the Secretary's responsibility to resolve conflicts within the medical evidence. *Richardson v. Perales*, 402 U.S. at 399, 91 S.Ct. at 1426, *Aponte v. Secretary, Department of Health and Human Services*, 728 F.2d 588, 591 (2d Cir.1984). Given Dr. Caccavali's previous diagnosis, and the findings of the consulting psychologist and social worker, the Secretary's resolution of this conflict is reasonable. The ALJ's finding that plaintiff possesses residual functional capacities to meet the physical and mental demands of his past relevant work is wholly consistent with the medical evidence presented in the record.

Based on my review of the record, I find that the Secretary's decision is supported by substantial evidence.

Therefore, the Secretary's motion is granted.

SO ORDERED.