Melissa Davis ATKINSON,
Plaintiff–Appellant,

v.

Jo Anne B. BARNHART, Commission-
er of Social Security Administra-
tion, Defendant–Appellee.

Docket No. 03–6098.

United States Court of Appeals,
Second Circuit.

Feb. 3, 2004.

Melissa Davis–Atkinson, New York, NY,
pro se.

Susan D. Baird, Assistant United States
Attorney (James B. Comey, United States
Attorney for the Southern District of New
York, on the brief; Sara L. Shudofsky,
Assistant United States Attorney, of coun-
sel), New York, NY, for Defendant–Appel-
lee.

PRESENT: WINTER, JACOBS, and
STRAUB, Circuit Judges.

*SUMMARY ORDER*

Plaintiff Melissa Davis–Atkinson appeals
from a judgment of the United States Dis-
trict Court for the Southern District of
New York (Robert W. Sweet, *Judge*), en-
tered on April 2, 2003, dismissing her com-
plaint.

Plaintiff filed applications for disability
insurance benefits and social security in-
come ("SSI") benefits as of April 23, 1998,
claiming that she had been disabled since

December 1, 1991. Following a hearing held on August 5, 1999, an ALJ denied plaintiff's claim on September 17, 1999. The Appeals Council granted plaintiff's request for review of the ALJ's decision and vacated the decision because, *inter alia,* the ALJ had not obtained a full set of records from St. Luke's–Roosevelt Hospital ("St.Luke's"), where plaintiff said she had been treated since 1991.

Following the order of the Appeals Council, on February 14, 2001, the ALJ served a subpoena on St. Luke's ordering the production of all medical records relating to plaintiff from "1991 to present." A second hearing was held on April 24, 2001. Plaintiff, appearing *pro se,* complained of seizures, severe headaches, and depression. At the hearing, plaintiff submitted a report from a treating physician, Dr. Luciano. Plaintiff indicated that Dr. Luciano was affiliated with New York University Hospital ("NYU"), and told the ALJ that she was being treated also at NYU by a neuropsychiatrist, Dr. Alpo. When asked if she received any medication for emotional problems, plaintiff said that Dr. Alpo had prescribed Celexa * in November 2000 but took her off of the medicine when she became pregnant.

Dr. Luciano said in his report that plaintiff had been under his care since August 22, 2000. The report noted that plaintiff was admitted to NYU for video electroencephalogram monitoring in November 2000. Dr. Luciano said that plaintiff followed up with him every three months, she continued to have non-epileptic seizures one to two times a day, and she suffered from frequent headaches. The report indicated also that plaintiff was followed up by NYU's neuropsychiatrist every six weeks. Dr. Luciano's diagnoses were non-

epileptic seizures, mood disorder, and headaches. The administrative record does not contain a report from Dr. Alpo, or any treatment notes or other medical records from NYU. Prior to the commencement of her treatment at NYU, plaintiff visited the neurology clinic at St. Luke's a number of times. On at least two occasions, the attending physician concluded that she was likely suffering from "pseudo-seizures." **

On September 26, 2001, the ALJ issued a decision finding that plaintiff was not disabled at any time through the date of the ALJ's decision.

The ALJ noted that plaintiff met the disability insurance status requirement of Title II of the Social Security Act through September 30, 1992, but not thereafter. Applying the five-step process for determining whether a claimant is disabled, *see* 20 C.F.R. §§ 404.1520, 416.920, the ALJ first found that plaintiff had not engaged in substantial gainful activity since December 1, 1991. Next, the ALJ determined that plaintiff's seizure disorder was a "severe" impairment, but the disorder did not meet the criteria for a listed impairment. With regard to plaintiff's claim of depression, the ALJ found that plaintiff did not have a "severe" mental impairment. In reaching that conclusion, the ALJ discounted the opinion of Dr. Mannucci, an examining physician, who said that plaintiff was "not able to grasp or to follow instructions and ha[d] very poor ability to respond appropriately to supervision, coworkers and work pressures in a work setting." The ALJ found that Dr. Mannucci's opinion was not consistent with the doctor's own examination and was controverted by other evidence in the record. In

---

* Celexa is an antidepressant. *See Physicians' Desk Reference* 1344 (57th ed.2003).

** A pseudoseizure is defined as a seizure of psychogenic, or mental, origin or causation. *PDR Medical Dictionary* 1454, 1457 (1995).

particular, the ALJ asserted that plaintiff had "never received psychiatric treatment for her alleged depression" and had "never been prescribed anti-depressant medication."

In assessing plaintiff's residual functional capacity at step four of the five-step evaluation, the ALJ concluded that plaintiff could perform work at all exertional levels, so long as the work did not require exposure to unprotected heights or dangerous machinery. The ALJ concluded also that plaintiff did not have "any significant limitations for the mental demands of work." Based on his assessment of plaintiff's residual functional capacity, the ALJ determined at step four that plaintiff was able to perform her past work as a telephone interviewer, beauty salon assistant, and department store clerk. Thus, the ALJ concluded that plaintiff was not disabled and therefore not entitled to either SSI or disability insurance benefits.

In reviewing a determination made by the Social Security Commissioner, this Court will " 'undertake [its] own plenary review of the administrative record to determine whether substantial evidence supports the [Commisioner]'s denial of benefits.' " *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996) (quoting *Havas v. Bowen*, 804 F.2d 783, 785 (2d Cir.1986)) (second alteration in original). The Commissioner's determination will only be set aside if it is based upon legal error or not supported by substantial evidence. *See id.* " 'When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence.' " *Id.* at 39 (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)) (alteration in original).

The ALJ has an affirmative duty to develop the administrative record. *See,* e.g., *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.1999); *Pratts*, 94 F.3d at 37; *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996). This duty is present even when a claimant is represented by counsel, *see Rosa*, 168 F.3d at 79, but it is heightened when a claimant proceeds *pro se*, *see Echevarria v. Sec'y of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir.1982) ("Where, as here, the claimant is unrepresented by counsel, the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.") (internal quotation marks omitted).

We hold that the ALJ did not adequately fulfill his duty to develop the record in this case. At the hearing, plaintiff clearly indicated that she was being treated at both NYU and St. Luke's. The ALJ sought medical records from St. Luke's from 1991 to the present, but made no similar request to NYU. The gap in the record is particularly glaring because the ALJ based his conclusion that plaintiff did not have a serious mental impairment on the fact that she had "never received psychiatric treatment for her alleged depression" and had "never been prescribed antidepressant medication." Yet plaintiff testified at the hearing that she was being treated by a neuropsychiatrist, Dr. Alpo, and that Dr. Alpo prescribed Celexa, an antidepressant. The ALJ should have sought an evaluation and treatment notes from Dr. Alpo before concluding that plaintiff's mental impairment did not significantly affect her work-related abilities. In addition, Dr. Alpo's report and treatment notes might have contained important information about the extent of plaintiff's seizure disorder. The ALJ should have also sought treatment notes from Dr. Luciano and the results of tests conducted at NYU before making an assessment as to the severity of plaintiff's seizure disorder. Finally, a more detailed report from

Dr. Luciano would have been helpful. Dr. Luciano noted that plaintiff had non-epileptic seizures one to two times a day and suffered from frequent headaches. However, Dr. Luciano's report does not express an opinion as to the effect of plaintiff's seizures and headaches on her ability to work. A more detailed report from Dr. Luciano would likewise have been helpful to either confirm or dispute the diagnosis of physicians at St. Luke's that the daily seizures plaintiff experienced were likely pseudoseizures.

We vacate the judgment of the District Court and remand to the District Court with instructions to remand to the Commissioner. We vacate the decision with respect to both SSI benefits and disability insurance benefits. On remand, the Commissioner should 1) request a report from Dr. Alpo and an updated report from Dr. Luciano; 2) request medical records, including treatment notes and test results, from NYU; and 3) give plaintiff an opportunity to submit any missing records from St. Luke's.*** After reviewing the new medical evidence, the Commissioner should reconsider under step two of the five-step process whether plaintiff's mental impairment is a severe impairment. *See* 20 C.F.R. §§ 404.1520a, 416.920a. The Commissioner should reconsider also the effect of plaintiff's mental impairment on her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945. In addition, the Commissioner should reassess plaintiff's residual functional capacity in light of any new medical evidence relating to her seizure disorder. Finally, if the Commissioner determines that plaintiff was under a disability as defined by the Social Security Act at any time, the Commissioner should consider in particular whether plaintiff was disabled prior to September

*** Plaintiff claimed that she had been treated at St. Luke's beginning in 1991. However,

30, 1992, when her disability insurance status expired.

For the reasons set forth above, the judgment of the District Court is hereby VACATED and the case REMANDED.

the earliest records contained in the administrative record from St. Luke's are from 1997.