**Luisa ROSADO, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 89 Civ. 1580 (RO).**

United States District Court, S.D. New York.

Oct. 8, 1992.

James M. Baker, Bronx Legal Services, Bronx, N.Y., for plaintiff.

Linda A. Riffkin, Sp. Asst. U.S. Atty., New York City, for defendant.

## ORDER

OWEN, District Judge.

Memorandum. The written report and recommendation are hereby accepted and the conclusion is made in order of this court.

## REPORT AND RECOMMENDATION TO THE HONORABLE RICHARD OWEN

GRUBIN, United States Magistrate Judge:

This is an action brought under the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), to review a final decision of the Secretary of Health and Human Services ("the Secretary") denying plaintiff's application for Supplemental Security Income ("SSI") benefits based on disability. Defendant and plaintiff have each moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons stated below, I respectfully recommend that defendant's motion be granted and plaintiff's be denied.

Plaintiff filed an application for SSI benefits on October 9, 1987, alleging disability due to diabetes, high blood pressure and poor vision. (R 29–38). The application,

which did not cite a date on which the alleged impairment(s) began (R 30), was denied on January 22, 1988 (R 40–44), and denied on reconsideration on May 23, 1988. (R 48).[1] At plaintiff's request, a hearing was held, before Administrative Law Judge Jeffrey W. Kohlman ("the ALJ") on September 6, 1988, at which plaintiff appeared *pro se* and testified through a Spanish language interpreter. (R 11–23). On September 26, 1988, the ALJ issued a decision denying plaintiff benefits (R 7–10), based on his finding that her impairments were not "severe," insofar as they did not "significantly limit her ability to perform basic work-related activities," and that she therefore was not under a "disability" as defined in the Act. (R 10). On January 26, 1989, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (R 3–4).

Proceeding *in forma pauperis* and *pro se*, plaintiff commenced this action on March 11, 1989, stating that she is entitled to receive disability benefits because she is "a very sick person, suffering from diabetes [and] acute arthritis, also my public assistance check is not enough," and alleging that her disability has existed since 1978. (Complaint ¶ 4). On August 15, 1989, defendant moved for judgment on the pleadings. Plaintiff thereafter obtained representation by Bronx Legal Services and has now also moved for judgment on the pleadings.

## BACKGROUND

*Hearing Testimony*

Plaintiff testified that she was born in Puerto Rico on April 17, 1926. (R 19, 29).[2] She has a grade-school education and speaks Spanish but little or no English. (R 19).[3] She has three grown children and is

---

**1.** Plaintiff appears to have filed at least three earlier unsuccessful applications for SSA or SSI disability benefits. The October 9, 1987 application refers to two applications that were denied in 1983. (R 30). The record also refers to an April 6, 1987 SSI application, involving a claim of disability on the grounds of "diabetes, a breathing problem, arthritis and high blood

pressure," that was denied at the initial determination level on June 30, 1987. (R 24–28).

**2.** "R" followed by numerals refers to page numbers of the certified administrative record filed herein by the Secretary.

**3.** At her September 6, 1988 hearing, plaintiff testified that she completed only the second grade. (R 19). According to her Disability Re-

separated from her husband. (R 16). Since the late 1970's she has lived alone in a fifth-floor walk-up apartment in the Bronx. (R 17). She uses the stairs two or three times a day. Plaintiff testified that she last worked in 1979, as a cleaner in a hospital. (R 19). (In her April 24, 1987 Disability Report, plaintiff reported that her only job was from 1970 to 1975 when she worked as a home attendant, caring for elderly individuals. (R 55, 59).)

*Medical Evidence in the Record*

A. Treating Physicians' Reports

At various times from 1984 through 1987, plaintiff received outpatient treatment at the Morrisania Hospital Family Care Center for diabetes mellitus, hypertension, allergic rhinitis, complaints of arthritis and other pains, and gynecological matters. (R 89–109, 129–165). The earliest evidence in the record consists of the results of x-rays of the chest and thoracic spine taken on March 8, 1984. The chest x-ray was normal for plaintiff's age, and changes of the thoracic spine consistent with the plaintiff's age were noted. (R 91). It is not clear from the record when plaintiff was first diagnosed as having diabetes mellitus, but the Morrisania records indicate she was tested for that condition at least as of 1985 and she was first prescribed oral medication (Diabenese) on January 8, 1986. On at least five occasions during the 1986–1987 period, tests indicated elevated glucose levels (R 101, 107, 137, 141, 163), and her medication was increased. (R 109, 137). Most blood pressure readings taken at Morrisania were within normal limits for systolic and diastolic pressure, but plaintiff was advised to continue a low salt diet. (R 101). A "Team D" report at Morrisania, dated March 11, 1987, stated that plaintiff had not been treated since July 1986 because she had been in Puerto Rico.[4] According to the report, plaintiff stated that she continued to take her same medication in Puerto Rico, had no other problems and was

"feeling fine." Her physical examination was normal. (R 139). An EKG taken in April 1987 revealed "borderline" abnormalities in the left atrium. (R 148). Plaintiff complained of a sore and itching nose on April 22, 1987, she was treated for a vaginal monilial infection on May 15, 1987, and she was diagnosed with an upper respiratory infection on November 10, 1987. (R 132, 137, 152).

A terse "Team D" note date stamped April 29, 1987 (but probably written earlier) stated: "Pt unemployable. Pt wants a letter for SSI. [W]ill refer to Social S[ervice]." Plaintiff received counseling from the Morrisania Social Service Department at thirteen sessions between April 29, 1987 and December 2, 1987. (R 149–50, 153, 155–57, 159–61). At her "initial intake interview" on April 22, 1987, plaintiff said that she needed a letter for SSI stating her medical condition and complained of tightness in her chest, depression, headaches and difficulty sleeping. According to the reports, "All of this started," she explained, "after [she] had been robbed four times." The interviewer noted that she appeared "anxious but oriented." (R 161). Subsequent appointments focused on her complaints about apartment repairs and her desire to apply for other housing. The repairs were completed and she was advised that she would qualify for senior citizen housing shortly, when she turned 62. In a "closing summary" on December 2, 1987, the Morrisania social worker stated that "supportive counseling relieved pts anxiety" and the case was closed. (R 149).

The record also contains a copy of a June 17, 1987 report to the New York State Department of Social Services from private physician Dr. Amparo Yuzon, who treated plaintiff on May 20, 1986 and January 8, 1987. With respect to her first visit, Dr. Yuzon reported:

> The diagnosis at that time was diabetes. Her blood pressure was 140/80 which is essentially within normal limits and she

---

port dated April 24, 1987, she completed the fourth grade. (R 55).

**4.** However, as discussed below, a report in the record from private physician Dr. Amparo Yuzon in New York states that he treated plaintiff on January 8, 1987.

was also seen at that time for an upper respiratory infection. Current diabetes and hypertension were well controlled and because she complained of recurrent abdominal cramps, a thyroid scan was done which was within normal limits. Fasting blood sugar showed that her diabetes was controlled at that time with medication and a CBC was also within normal limits.

On plaintiff's January 8, 1987 visit:

Her blood sugar was elevated at that time and her cholesterol and triglycerides were also slightly elevated, but her kidney functions were within normal limits. She complained of dizziness, and her medications were adjusted at that time. She had [sic], at that time, and has not had to my knowledge any complaints of any cardiac type chest pain of any nature and I have not treated her or administered to her any medications for such a complaint.

(R 110).

The record also contains medical records from Mount Sinai Hospital covering the period November 17, 1987 through May 4, 1988. (R 114–128). On November 17, 1987, plaintiff was treated at the Mt. Sinai emergency room after she complained of backache, stomach ache, dizziness and headaches. On subsequent visits, plaintiff had "multiple somatic complaints," though reports noted that her epigastric pain was relieved through medication, and upper gastrointestinal tests were negative. (R 114, 117, 120). On January 6, 1988, plaintiff was referred to a social worker for "anxiety" and "living difficulties." (R 114). A fairly illegible copy of a report from a Mt. Sinai social worker dated January 21, 1988 apparently indicates that plaintiff again complained of sleeping difficulties, housing difficulties and assorted aches. (R 115).

The record also contains a Residual Functional Capacity evaluation from Dr. C. Loffer of the Mt. Sinai Medical Associates dated August 15, 1987 or 1988 [5] that plaintiff apparently submitted after the hearing. (R 196–98; *see* 15–16). Although the file

contains no records from Mt. Sinai prior to plaintiff's emergency room treatment on November 17, 1987, Dr. Loffer reports that he saw plaintiff every three months from January 1987. He noted that plaintiff had complained of abdominal pain, that her upper gastrointestinal series was normal, that plaintiff had diabetes mellitus and was treated by means of oral medication, and that her prognosis was good. Dr. Loffer's opinion was that plaintiff could stand, sit or alternately sit and stand for unlimited periods; that she did not have to lie down during the day; that she could lift or carry up to ten pounds; that she had no problems with the use of her hands, or turning, bending, squatting or kneeling and no documented sight impairment.

### B. Consultative Report

The record also contains a report from a consultative physician, Dr. Peter Graham, who examined plaintiff on January 4, 1988. Plaintiff reported at that time a 10–year history of back pain brought upon by bending or prolonged standing and a 25–history of pains in the knees, ankles, hands, elbows and shoulders, as well as throbbing associated with morning stiffness and intermittent swelling of the ankles and knees. She also reported that her pain was exacerbated by prolonged walking and relieved by rest and Motrin. In his physical examination of plaintiff, Dr. Graham noted pain on flexion of both knees, full range of motion in those and other joints, and "adequate and symmetrical" muscle strength. Plaintiff reported a two-year history of hypertension, though she was not now taking any medication for that condition. She stated that she had never been hospitalized for her diabetes. She denied having headaches and any history of psychiatric disorder, and, neurologically, plaintiff was found "oriented, awake, alert and able to answer questions coherently." (R 166–68). Dr. Graham diagnosed plaintiff as suffering from diabetes mellitus (with "no evidence of diabetic retinopathy or symptoms suggestive of diabetic neuropathy"), hypertension ("presently normotensive"), arthri-

---

**5.** The date as written is "8/15/85." (R 198).

tis "by history" (with "slight pain on motion in both knees but no functional deficit noted") and back pains "by history" (again "no functional deficit noted"). (R 168).

### The ALJ's Decision

The ALJ found that plaintiff's impairments (which he found to be "diabetes, hypertension, and some joint pains") were not "severe," in that they did not "significantly limit her ability to perform basic work-related activities," and that she therefore was not under a disability as defined in the Act. He summarized the medical reports noting that her diabetes and hypertension were well controlled and that her arthritis and back pain "by history" presented no functional deficit. He found that plaintiff maintained an exertional capacity essentially consistent with her age and noted that she uses the stairs to her fifth-floor apartment two or three times a day, that she can travel alone by public transportation and that she can take care of her personal needs and household chores. The ALJ also took note of the terse note stating that plaintiff was "unemployable" written by the social worker on the Morrisania staff who referred plaintiff to the Social Service Department. The ALJ wrote, "I do not dispute this, but it results from her extremely poor educational-vocational profile. There is no medically determinable condition that is the cause of a severe impairment." (R 9).

### Subsequent Report Submitted Herein

Plaintiff has submitted to this court a report dated October 22, 1990 from psychometrician Maria Malinowska and neuropsychologist Dr. Roman Pabis, who are affiliated with the Saint Mark's Place Institute for Mental Health in New York. This report and the examination on which it is based were done after plaintiff obtained the representation of counsel herein.

On the basis of tests and a mental status examination conducted during the period September 15, 1990 through October 10, 1990, i.e., two years after the hearing, Malinowska and Pabis diagnosed plaintiff as having a "dysthymic disorder with signs of organicity"[6] and "mild mental retardation." (Ex. A to Plaintiff's Memorandum of Law). Both diagnoses are related back to the pre-September 26, 1988 period: "The patient['s] depression is chronic not major, which might be related to her medical problems and difficult marriage. Thus she must have been depressed for four to five years." The diagnosis of "low intellectual functioning" or "mild mental retardation," is based on plaintiff's IQ scores on the Wechsler Adult Intelligence Scale–Revised.[7] The authors conclude that this condition is "chronic" and "most likely a life long situation."

Plaintiff contends that this report would justify a finding that plaintiff's combined impairments are disabling and reversal of the ALJ's decision or, at least, a remand to include the report in the record.

### DISCUSSION

#### I.

■ For SSI purposes, a person is considered disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[8] That impairment must be of such severity that the person "is not only unable to do his previous work but cannot, considering his age, education, and

---

**6.** Dysthymia is "any disorder of mood." *Stedman's Medical Dictionary* (25th ed. 1990) 436.

**7.** According to the report, plaintiff's scores were as follows:
   Full Scale IQ = 69, Mild Mental Retardation
   Verbal IQ = 69, Mild Mental Retardation
   Performance IQ = 71, Borderline
(Ex. A to Plaintiff's Memorandum).

**8.** Since the standards for eligibility for supplemental security income benefits and judicial review thereof are virtually identical to the standards in disability insurance cases, decisions rendered under 42 U.S.C. § 423 are also applicable to cases under 42 U.S.C. § 1382c(a)(3). *Hankerson v. Harris,* 636 F.2d 893, 895 n. 2 (2d Cir.1980); *Rivera v. Harris,* 623 F.2d 212, 216 n. 4 (2d Cir.1980).

work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B). The evidence which must be considered in determining whether an individual is disabled includes: (1) objective medical facts; (2) diagnoses and medical opinions based on such facts; and (3) subjective evidence of disability, including the pain and the individual's educational background, age and work history. *Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2d Cir.1983) (per curiam); *Carroll v. Secretary,* 705 F.2d 638, 642 (2d Cir.1983); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980).

■ In reviewing a denial of disability benefits, the court is not empowered to make a *de novo* determination of whether the plaintiff is disabled. *Wagner v. Secretary of Health and Human Services,* 906 F.2d 856, 860 (2d Cir.1990). *See Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990); *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984); *Parker v. Harris,* 626 F.2d at 231. Rather, it is the function of the Secretary, and not the reviewing court, to pass on the credibility of witnesses, including the claimant, and to resolve material conflicts in the testimony. *Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Aponte v. Secretary,* 728 F.2d 588, 591 (2d Cir.1984); *Carroll v. Secretary,* 705 F.2d at 642; *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979). The court's function is limited to assessing whether the Secretary applied the proper legal standards in making his determination and whether that determination is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g), 1383(c)(3); *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987); *Donato v. Secretary,* 721 F.2d 414, 418 (2d Cir.1983). *See also Arnone v. Bowen,* 882 F.2d 34, 37 (2d Cir.1989).

In that regard, the Supreme Court has defined "substantial evidence" as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). *See also Johnson v. Bowen,* 817 F.2d at 986. The Secretary's finding will be sustained if supported by substantial evidence, 42 U.S.C. § 405(g), *see, e.g., Arnone v. Bowen,* 882 F.2d at 37, even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the Secretary's. *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *Anderson v. Sullivan,* 725 F.Supp. 704, 706 (S.D.N.Y.1989); *Spena v. Heckler,* 587 F.Supp. 1279, 1282 (S.D.N.Y. 1984). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988). *See Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); *Mongeur v. Heckler,* 722 F.2d at 1038.

■ The reviewing court must assure that the Secretary follows the "treating physician rule," under which the opinion of the claimant's treating physician on the subject of medical disability is entitled to extra weight because a treating physician is usually more familiar with a claimant's medical condition than other physicians, and a treating physician's opinion as to disability is binding unless controverted by substantial evidence. *Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986); *see also Wagner v. Secretary,* 906 F.2d at 861; *Vargas v. Sullivan,* 898 F.2d 293, 294 (2d Cir.1990); *Hidalgo v. Bowen,* 822 F.2d 294, 296–97 (2d Cir.1987); *Johnson v. Bowen,* 817 F.2d at 985–86; *Havas v. Bowen,* 804

F.2d 783, 785–86 (2d Cir.1986); *Stieberger v. Bowen,* 801 F.2d 29, 37 (2d Cir.1986). Ultimately, the "[r]esolution of genuine conflicts between the opinion of the treating source, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder." *Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988). *See Cruz v. Sullivan,* 912 F.2d at 12.

The Secretary's regulations set forth a five-step sequence to be used in evaluating disability claims. 20 CFR §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 2290, 96 L.Ed.2d 119 (1987); *Bowen v. City of New York,* 476 U.S. 467, 470, 106 S.Ct. 2022, 2025, 90 L.Ed.2d 462 (1986). *See also Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 888–89, 107 L.Ed.2d 967 (1990). As explained by the Court of Appeals in *Berry v. Schweiker,* 675 F.2d 464 (2d Cir.1982) (per curiam), the five steps are as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Id.* at 467. The claimant bears the burden of proof as to the first four of these steps. The ALJ's decision herein was made at step two of the analysis—*i.e.,* that plaintiff did not have a severe impairment that significantly limited her ability to do basic work activities.

Seeking either reversal of the ALJ's decision or a remand to "develop" the existing record and to consider the Malinowska–Pabis report, plaintiff argues herein: (1) the ALJ misapplied the "minimal" standards for "step two" determinations of severe impairments; (2) the ALJ improperly evaluated plaintiff's complaints of pain and failed to make necessary findings on her credibility; (3) the ALJ failed to take into account the finding of treating physician Dr. Loffer that she could not lift or carry more than ten pounds; (4) the ALJ failed to develop the record concerning plaintiff's psychiatric symptoms; and (5) the Malinowska–Pabis report should be made part of the record and, if it were, would require a reversal or at least a remand to enable consideration of its findings in conjunction with the rest of the record.

I find plaintiff's contentions must be rejected and that the decision of the Secretary should be affirmed because it is clear that the ALJ's decision is supported by substantial evidence in the record.

## II.

■ Under 20 C.F.R. §§ 404.1520(c) and 404.1521(a), an impairment or combination of impairments is not "severe" if it does not "significantly limit [the claimant's] physical or mental ability to do basic work activities." According to the Secretary's currently applicable ruling "[t]o clarify the policy for determining when a person's impairment(s) may be found 'not severe'":

> An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have *no more than a minimal effect on an individual's ability to do work* even if the individual's age, education, or work experience were specifically considered (*i.e.,* the person's impairment(s) has *no*

*more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities*). Social Security Ruling 85–28 (quoted in *Bowen v. Yuckert*, 482 U.S. at 154 n. 12, 107 S.Ct. at 2298 n. 12) (emphasis added). *See also Bowen v. Yuckert*, 482 U.S. at 158, 107 S.Ct. at 2300 (O'Connor, J., concurring) ("Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits" at step two of the analysis); *Dixon v. Bowen*, 126 F.R.D. 483, 485 n. 2 (S.D.N.Y.1989) (also quoting SSR 85–28).

On plaintiff's primary medical problem, diabetes, the ALJ found correctly, based on the evidence, that it was "well controlled" and "would be better controlled if plaintiff complied with dietary advice." (R 9). In reaching this conclusion, the ALJ relied on plaintiff's treating physician, Dr. Yuzon, who, indeed, found the diabetes "well controlled" by medication; the consultative physician, Dr. Graham, who "found no evidence of diabetic retinopathy nor symptoms suggestive of diabetic neuropathy"; and the medical records from Morrisania (and elsewhere), which indicated mild elevation of glucose levels, but "no evidence of organ damage, neuropathy, retinopathy or specific functional impairment." (*Id.*)[9]

With respect to plaintiff's hypertension, the ALJ again properly cited her treating physician, who found that her blood pressure was within normal levels and reported that her hypertension was "well controlled," and Dr. Graham, who found her pressure normal at the time of the examination. (R 9). Almost all the numerous blood pressure readings in the record were within normal limits, and plaintiff even indicated to Dr. Graham that she was not taking medication at that time. (R 166).

With respect to plaintiff's various claims of joint pains and arthritis, the ALJ noted correctly that the record is devoid of any history of functional deficits or significant restrictions on the use of her joints and limbs. (R 9). Indeed, although the ALJ did not refer to them, the findings made by Dr. Loffer who saw plaintiff every three months were that her abilities to continuously stand, continuously sit and alternately sit or stand were unlimited; that she did not have to lie down during the day; that she had no problems grasping, pushing, pulling or doing fine hand manipulations; and that she had no problems bending, squatting, kneeling or turning parts of her body. The only restriction noted whatsoever was that she could lift and carry only up to ten pounds. (R 196–98).

The ALJ also considered the evidence of plaintiff's anxiety in the record, *i.e.*, her complaints in her initial intake interview with the Morrisania Social Service Department of depression, headaches and difficulty sleeping. The ALJ correctly pointed out that, according to the social workers' notes of their sessions with plaintiff over the next seven months, plaintiff's problems were apparently relieved by "supportive counseling," and, specifically, the resolution of complaints she had made to her landlord and the clarification of her housing options once she became 62. (R 9).

In essence, the record here shows a claimant who, although suffering from some anxiety, except for diabetes and hypertension which were well under control, had no impairments beyond pain in some joints, possibly arthritic, which did not, however, limit her ability to function in any significant way.[10]

■ Plaintiff's contention that the ALJ improperly evaluated her complaints of pain and failed to make necessary findings on her credibility is without merit. An ALJ "must consider a claimant's subjective complaints of pain, although such complaints are not conclusive." *Morris v. Bowen*, No. 88 Civ. 0591 (KMW), 1989 U.S. Dist. Lexis 220 at *14, 1989 WL 270108 at *5 (S.D.N.Y.

---

9. That plaintiff sometimes did not comply with dietary advice is expressly indicated in two Morrisania reports (R 93, 94).

10. Plaintiff's complaint of poor vision is wholly unsupported by the record. Indeed, she apparently told Dr. Graham she had no eye problems. The sole bases for her claim of a disabling "breathing problem" appear to be an upper respiratory infection in 1986 and ongoing treatment for allergic rhinitis.

Jan. 12, 1989). As amended by the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423(d)(5)(A) provides, in pertinent part:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph ... would lead to a conclusion that the individual is under a disability.

Thus, "credible pain testimony" that is associated with a "clinically demonstrated impairment" may contribute to a determination that a claimant is disabled. *Cruz v. Bowen*, No. 87 Civ. 0322 (LBS), 1987 U.S.Dist.Lexis 10553 at *22, 1987 WL 19965 at *8 (S.D.N.Y. Nov. 10, 1987). But, as Judge Motley, citing § 423(d)(5)(A), has emphasized, "Clearly, it is not improper for an ALJ to question the credibility of a claimant's statements of disabling pain, or to refuse to take them at face value."

Here, despite counsel's invocation of the standard argument, we do not even have allegations of *disabling* pain. Plaintiff testified merely that she has some pain in her knees when she moves about. *Artrip v. Bowen*, 651 F.Supp. 376, 380 (S.D.N.Y. 1987); *see also Black v. Sullivan*, No. 88 Civ. 0707 (JMW), 1989 U.S.Dist.Lexis 11494 at *10 (S.D.N.Y. Sept. 28, 1989); *Lawler v. Sullivan*, No. 88 Civ. 5459 (MBM), 1989 U.S.Dist.Lexis 11564 at *13, 1989 WL 117694 at *4 (S.D.N.Y. Sept. 29, 1989). As the ALJ noted, plaintiff testified to a variety of regular activities, including walking, using the stairs, shopping, cooking and other household chores, and there was no evidence in the record of functional deficits or restrictions on the use of her joints and limbs. In any event, in the absence in this record of a clinically demonstrated impairment, even if plaintiff had alleged disabling pain, the ALJ's rejection of her allegation would be fully supported by the record.

Plaintiff's contention that the ALJ incorrectly "ignored" Dr. Loffer's finding that plaintiff could not lift or carry more than ten pounds, which, plaintiff claims, constituted more than a slight abnormality, especially in conjunction with her other problems, is also without merit. This record shows clearly that this plaintiff was able to perform basic activities required to do work.[11]

Plaintiff's additional argument, that the ALJ failed to develop the record regarding evidence of a psychiatric impairment, must also be rejected. The record shows that plaintiff suffered from anxiety, principally, at that time over her living arrangements. Apparently, after some "supportive counseling," after some repairs were made to her apartment and after she was advised that she would soon qualify for senior citizen housing, the "problem" was "curtailed," her anxiety was "relieved" and her case "closed." (R 149). As the ALJ found, there were "no signs of determinate mental impairment or indication of any mental incapacity for work functions." Although plaintiff alleges in this connection the ALJ failed to clarify illegible copies of documents, she points to no specific document at all, saying, merely, "For example, medical documents submitted by [plaintiff's] doctors are in many cases illegible." (Plaintiff's Memorandum at 38). Plaintiff, however, is incorrect. While I find the January 21, 1988 "Progress Note," apparently of a Mt. Sinai social worker, unreadable, all other documents relating to plaintiff's anxiety and counseling are rather quite legible, remarkably more so than the

---

**11.** While it is true he did not cite Dr. Loffer's findings, there is no reason to believe the ALJ "ignored" them. Plaintiff picks among the evidence and chooses only that which supports her claim. Dr. Loffer *also* found that plaintiff's prognosis regarding her diabetes was good, that plaintiff could stand, sit or alternately stand and sit for unlimited periods, and that she had no problems with the use of her hands, or turning, bending, squatting or kneeling. It is also noteworthy that Dr. Loffer does not comment at all on plaintiff's joint pains.

general array of documents seen in these types of cases.

Turning to plaintiff's final contention concerning the 1990 Malinowska–Pabis report of examinations undertaken for the purposes of this action, I conclude it must be rejected as well. First, we should dispose of plaintiff's attempt to characterize Malinowska and Pabis as "treating sources." (*Id.* at 45). Nothing in the record suggests that these individuals or anyone else at the Saint Mark's Place Institute had an ongoing physician-patient relationship with plaintiff at any time pertinent to their report. Indeed, as plaintiff's Memorandum elsewhere states, the Malinowska–Pabis report "was based upon an extensive *consultative* examination that was completed over the course of three weeks, and, for which Ms. Rosado received appointments on five separate days." (*Id.* at 44; emphasis added). The report itself states, "The patient was only examined and she was advised to seek treatment for depression." (Ex. A to *id.*).

■ The Act provides that a court may order the Secretary to consider evidence not presented at the administrative proceedings, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The claimant must show that (1) the proffered new evidence is " 'new' and not merely cumulative of what is already in the record"; (2) it is "material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative"; and (3) there was "good cause for [the] failure to present the evidence earlier." *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir.1988). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence

would have influenced the Secretary to decide claimant's application differently." *Id.*

■ Plaintiff proffers her limited education and inability to read or write English as well as her "serious emotional disorder and extremely low intellectual functioning abilities" as "good cause" for her failure to obtain this evidence not until two years after the hearing. (Plaintiff's Memorandum at 48). Inasmuch as the record indicates that plaintiff was familiar with the SSI application process and had sought advice and reports concerning the instant application, it is not clear that she was "hindered" by her *pro se* status from raising these alleged problems. *Jones v. Sullivan,* 949 F.2d 57, 61 (2d Cir.1991); *see also Lisa v. Secretary of Health & Human Services,* 940 F.2d 40, 46 (2d Cir.1991). However, even if we assume that plaintiff's *pro se* status constituted "good cause" for these purposes, plaintiff still has not made a sufficient showing that the proffered evidence is either "probative" or "relevant to [her] condition during the time periods for which benefits were denied," *i.e.,* on or prior to September 26, 1988. *Tirado v. Bowen,* 842 F.2d at 597. The Malinowska–Pabis report's reasons for applying its diagnosis of "dysthymia" to the pre-September 26, 1988 period are speculative and question-begging. The report states, "The patient['s] depression is chronic not major, which might be related to her medical problems and difficult marriage. Thus she must have been depressed for four to five years." Insofar as plaintiff separated from her husband around 1979 and was presumably in a "difficult" domestic situation before then,[12] and, as the record demonstrates, there are reasons to doubt the severity of plaintiff's medical problems prior to September 26, 1988, there is no basis for concluding that plaintiff *"must have been depressed"* for "four or five years." [13]

---

**12.** With respect to her marriage, the report notes: "Married a man of her age with whom she had three children. The marriage lasted 27 years. The husband was an alcoholic who abused her physically and psychologically. They separated 11 years ago." (Ex. A to Plaintiff's Memorandum).

**13.** The report's reference to unspecified "signs of organicity" of "unknown origin" for plaintiff's "dysthymic disorder" also seems inconsistent with its precise formulation of its duration.

With respect to the report's other diagnosis, "low intellectual functioning" or "mild mental retardation," which is based on plaintiff's IQ scores on the Wechsler Adult Intelligence Scale–Revised, there is likewise an insufficient basis for finding the new evidence "relevant to [her] condition" on or prior to September 26, 1988. The authors conclude that plaintiff's condition is "chronic" and "most likely a life long situation." If all this means is that plaintiff is likely to have "function[ed]" at a "low intellectual" level during earlier periods in her adult life, however, the conclusion has no particular bearing on whether she suffered from a severe impairment for purposes of step two, for it is quite clear it had only a minimal, if any, effect on her ability to work. If the report means to conclude that plaintiff was mildly mentally retarded on or before September 26, 1988, however, such a conclusion appears tenuous on the basis of one examination, taken two years later, when plaintiff was 64 years old, the results of which are themselves only barely and partly in the relevant range of scores. Under these circumstances, the report, "solicited by [plaintiff's] counsel just prior to the filing of [plaintiff's] brief, [is] not material to the evaluation of [plaintiff's] condition during the time period for which benefits were denied." *Timmons v. Sullivan,* No. 88 Civ. 6612 (RWS), 1989 U.S.Dist.Lexis 15132 at *25, 1989 WL 156300 at *9 (S.D.N.Y. Dec. 18, 1989) (denying remand for new evidence evaluating plaintiff's condition during a period over a year later than the Secretary's final decision). This is especially clear in the instant case in view of the absence of evidence in the existing record indicating any significant limitation on plaintiff's mental ability to perform work-related functions. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553 (2d Cir.1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say.") It is clear on the record that plaintiff, even assuming a low intelligence level, was able to carry on the basic functions needed to work and to perform all the daily tasks of living. Had such "new" evidence been presented to the ALJ two years after plaintiff's hearing, there is not a "reasonable possibility" that he would have reached a different result on plaintiff's disability for the relevant period. *Tirado v. Bowen,* 842 F.2d at 597.

## CONCLUSION

For the foregoing reasons I respectfully recommend that your Honor deny plaintiff's motion and grant defendant's, and affirm the decision of the Secretary.

Copies of this Report and Recommendation have been mailed this date to the following:

James M. Baker, Esq.
Bronx Legal Services
579 Courtlandt Avenue
Bronx, New York 10451
Linda A. Riffkin, Esq.
Special Assistant United States Attorney
100 Church Street, 19th Floor
New York, New York 10007

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Richard Owen, to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Owen. *See* 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(b); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam). *See generally* Fed.R.Civ.P. 6(a), 6(e).

Dated: New York, New York
    April 15, 1992